498 F.2d 789
 86 L.R.R.M. (BNA) 2412, 162 U.S.App.D.C. 247,
74 Lab.Cas. P 10,004
 Newman A. LAMB
v.
Edward L. CAREY, Appellant, C. W. Davis, and Paul R. Dean,
Trustees, United Mine Workers of America Welfare &
Retirement Fund.
Willie Ray BLANKENSHIP et al.,
v.
W. A. (Tony) BOYLE et al., and Edward L. Carey, Individually
and in their capacities as president, vice president and
general counsel, respectively, of the United Mine Workers of
America, Appellants, The United Mine Workers of America et al.
 Nos. 73-1513, 73-1514.
 United States Court of Appeals, District of Columbia Circuit.
 Argued March 4, 1974.
Decided May 6, 1974.
 
 1
 Ross O'Donoghue, Washington, D.C., with whom George A. Fisher, Washington, D.C., was on the brief, for appellant Carey, etc., in Nos. 73-1513 and 73-1514.
 
 
 2
 Joseph A. Yablonski, Washington, D.C., with whom Daniel B. Edelman, Washington, D.C., and Lewis D. Sargentich, Washington, D.C., were on the brief, for appellee, United Mine Workers of America.
 
 
 3
 Fred M. Vinson Jr. and Michael P. Bentzen, Washington, D.C., entered appearances for appellee United Mine Workers of America and Retirement Fund.
 
 
 4
 Before TAMM and ROBINSON, Circuit Judges, and GEORGE L. HART, Jr.,* Chief Judge, United States District Court for the District of Columbia.
 
 HART, Chief District Judge:
 
 5
 In June of 1971 appellant, Edward L. Carey, was named a Trustee of the United Mine Workers of America Welfare and Retirement Fund of 1950 (hereinafter the 'Fund') to fill the unexpired term of W. A. Boyle who had been removed pursuant to an Order entered in the case of Blankenship v. Boyle, 329 F.Supp. 1089 (D.D.C.1971). By the terms of the National Bituminous Coal Wage Agreement of 1971 between the United Mine Workers of America (hereinafter the 'Union') and the coal operators (hereinafter the 'Operators'), Carey was named as the Union's representative on the Fund's Board of Trustees, the appointment to expire upon the termination of the Agreement, November 12, 1974. On March 19, 1973, the District Court, after holding a hearing on the matter, entered an Order removing Carey as a Trustee of the Fund. The appeal from that Order raises two questions for decision here:
 
 
 6
 1. Whether the District Court had jurisdiction to enter an order removing appellant; and
 
 
 7
 2. Whether the District Court abused its discretion in removing appellant.
 
 BACKGROUND
 
 8
 The Fund is an irrevocable trust originally established in 1950 pursuant to Section 302(c) of the Labor-Management Relations Act of 1947, 29 U.S.C. 186(c). A detailed discussion of the Fund is provided by the District Court in its opinion in Blankenship v. Boyle, supra. The salient features of the Fund relevant to this appeal are hereinafter set forth. The purpose of the Fund is to pay various benefits 'from principal or income or both', to employees of coal operators, their families and dependents. These benefits cover medical and hospital care, pensions, compensation for work-related injuries or illness, death, or disability.
 
 
 9
 The Fund is administered by three Trustees: one designated by the Union, one designated by the Operators, and the third a 'neutral party designated by the other two . . .' Trustees. Each Trustee serves for the duration of a given collective bargaining agreement, subject to termination by resignation, death, or an inability or unwillingness to serve. The Trustees have considerable discretion to determine the types and levels of benefits. The direct income to the Fund is provided by royalty payments made by the Operators as specified in the collective bargaining agreement and based on the tonnage mined.
 
 
 10
 The operation of the Fund has recently been the subject of complex and farreaching legal challenges. See Blankenship v. Boyle, supra. The essence of that litigation was a class action on behalf of the coal miner beneficiaries challenging certain Trustees of the Fund for breaches of their fiduciary duty. That lawsuit, which also named the Union as a defendant, was divided into three parts: (1) fiduciary breaches, (2) challenges to Fund regulations, and (3) internal Union issues. The second issue was settled prior to trial, and the third part was consolidated with Yablonski v. UMWA, C.A. 3436-69 (now Weaver v. UMWA). For the purposes of this appeal we are concerned with the history of the litigation involving the fiduciary issues.
 
 
 11
 After lengthy consideration of the case in Blankenship, the District Court found a variety of breaches of fiduciary duty, some conspiratorially inspired, others not. As part of the equitable relief granted, the Court removed two of the Trustees, including W. A. Boyle, ordered the Fund to cease doing business with the National Bank of Washington, and set a limit on the Fund's non-interest bearing accounts. This Order was appealed, and stays were denied both in the District Court and in this Court.
 
 
 12
 As a result of Boyle's removal as Trustee, appellant, Carey, who was already serving as the Union's general counsel, was appointed by the Union to fill the vacancy. This appointment was incorporated in the terms of the new agreement signed with the Operators in November 1971.
 
 
 13
 Meanwhile Boyle's presidency of the Union was challenged in Hodgson and Trbovich v. UMWA, (D.D.C.1972), 344 F.Supp. 17. The plaintiffs there were ultimately successful in requiring a new election, in which the pro-Boyle forces were defeated. Arnold Miller was certified as the new president on December 22, 1972, and thereafter on January 8, 1973, sent a telegram to Carey stating that he was being removed as a Trustee of the Fund. On January 9 the Operator's Trustee and the neutral Trustee, over Carey's objection, directed the Fund's special counsel to seek instructions from the District Court, and the instant litigation resulted.
 
 
 14
 Appellant contends that the District Court lacked jurisdiction to consider this matter because jurisdiction had vested in this appellate Court by virtue of the Blankenship appeal which is still pending, that in any event the District Court lacked any ancillary jurisdiction to decide the issues raised, and that the District Court abused its discretion in removing appellant. We will respond to each argument in turn.
 
 JURISDICTION
 
 15
 Appellants cite Goldsborough v. Marshall, 100 U.S.App.D.C. 134, 243 F.2d 240 (1957), to support the proposition that the pending appeal in Blankenship deprived the District Court of any jurisdiction to consider the issues raised in this case. Goldsborough cannot sustain appellant's argument. There the Court had before it co-administrators of a testamentary trust who were continually antagonistic towards each other because of conflicting claims. The court removed both administrators and replaced them with a neutral trustee. While this decision was on appeal, the newly appointed trustee declined to serve, and the District Court appointed a new trustee. In the course of its opinion the Court stated that the general rule was that an appeal suspends the power of the trial court to proceed further in the case. However in support of its actions the Court stated:
 
 
 16
 'The substantial rights directly involved in the appeal from the first order related to whether appellant should have been allowed to continue to administer the estate. The appointment of a second neutral administrator after the first neutral administrator declined the appointment did not finally adjudicate substantial rights involved in that appeal . . .. In the circumstances the District Court had authority to protect the assets of the estate, and did not abuse its discretion by acting as it did.' 243 F.2d at 244.
 
 
 17
 In the instant case the District Court faced a similar situation. The gravamen of the plaintiffs' claims in Blankenship was that the Trustees of the Fund were engaged in acts of fiduciary indiscretion to the detriment of the beneficiaries and to the detriment of the Fund itself. The trial Court agreed with many of these assertions and ordered that certain Trustees be removed. While the appeal from the trial Court's order was pending, a problem arose concerning one of the 'replacement' Trustees, the appellant herein. Following the rule in Goldsborough, the District Court here had the right to determine if the remedial effect of its order in Blankenship was being undermined. The action taken by the District Court to protect the efficacy of its equitable relief was in no way dispositive of the issues raised on the appeal of the main case.
 
 
 18
 The question has also been raised as to whether the District Court had ancillary jurisdiction to consider the instant case, arising as it did, subsequent to the acts complained of in the original complaint. We hold that it did.
 
 
 19
 In Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969), this Court held that the proper determination of what ancillary action a court may appropriately take in aid of its original jurisdiction turns on the relationship between the original matter and the ancillary issue. The major purpose of such jurisdiction is to insure that a judgment of a court is given full effect. This Court set forth four guidelines to aid in the determination of proper ancillary jurisdiction:
 
 
 20
 '. . . Ancillary jurisdiction should attach where: (1) the ancillary matter arises from the same transaction which was the basis of the main proceedings, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new fact-finding proceeding; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled to protect the integrity of the main proceeding . . .' 417 F.2d at 740
 
 
 21
 In applying this approach to the matter at hand: (1) the nature of the issues raised in this case was integral to the main proceeding, that is the fiduciary relationship of the Trustees to the Fund; (2) the essential matters concerning the Fund had already been extensively briefed and argued before the District Court; (3) appellant was afforded due process through a hearing in which he was given the opportunity to present evidence and to cross-examine witnesses; and (4) the protection of the Fund's assets was essential to maintain the integrity of the Court's equitable decree.
 
 
 22
 Additionally the District Court fully expected to exercise supervisory powers over the Fund during the pendency of the appeal because the Court's decree of May 1971 provided that the District Court would retain jurisdiction 'for the construction or carrying out of (its) judgment and for the enforcement of compliance therewith.'
 
 DISTRICT COURT'S DISCRETION
 
 23
 Having decided that the District Court properly asserted jurisdiction, we examine whether the trial Court abused its discretion. We find that it did not.
 
 
 24
 The Fund involved here is unique, established under a specific exception to the Labor-Management Relations Act of 1947, 29 U.S.C. 186(c). It is a hybrid trust which does not neatly fit into the categories of ordinary trusts. Roark v. Lewis, 130 U.S.App.D.C. 360, 401 F.2d 425 (1968). The funds which make up the trust res are not paid to the trust as acts of beneficence, but rather are paid to satisfy a contractual duty owed by the signatory operators to the signatory union and the employees so represented. Roark v. Lewis, supra.
 
 
 25
 The statutory scheme for the Fund provides that '. . . employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon . . .' It is evident that Congress was aware of the unusual need in the field of labor relations for the special interests of the employers and the employees to be represented in the administration of the trust. Also, recognizing that such representation might frequently lead to irreconcilable conflict, a neutral party had to be added to the board.
 
 
 26
 Regardless of their representative relationships, the Trustees of the Fund are still required to act with the highest fiduciary integrity toward the Fund and the beneficiaries. However, the District Court on March 15, 1973, made the unchallenged finding that 'close collaboration with the Union is required in an atmosphere of mutual confidence to further the objectives and the effectiveness of the Fund.' This places an even more stringent requirement on the actions of a Union Trustee, a requirement which is here of crucial importance.
 
 
 27
 Of course, this does not mean that the Union may replace its Trustee merely because it dislikes him. In its Opinion and Order of February 15, 1973, the trial Court noted that:
 
 
 28
 'If the Union desires changes in benefits or changes in the administration of the Fund, it can make its wishes known to the Trustees who will consider such suggestions in a deliberate fiduciary atmosphere . . .. The very nature of the Fund, however, is such that its integrity will be undermined if the Union is given the unilateral right to remove the Union Trustee whenever dissatisfaction or differences prompted by personality or political differences prompt the Union's management to seek a change.'
 
 
 29
 Equally true, it does not mean that the Court can remove a Trustee whenever the Union expresses dissatisfaction.
 
 
 30
 Carey, the general counsel of the Union, was designated a Trustee by Boyle after Boyle was removed by the District Court in June 1971. His appointment was continued in the new collective bargaining agreement effective November 12, 1971. After that agreement became effective, Boyle was ousted in a Court-ordered election, and Arnold Miller was certified president on December 22, 1972. The election was hotly and bitterly contested.
 
 
 31
 When the Court considered the matter of appellant's removal on February 15, 1973, the evidence presented was directed primarily to the Union's feelings that because Carey was closely allied with the defeated Boyle faction, that he would not 'seek to implement the wishes and programs of the membership.' The Court declined to remove appellant at that time, finding that there had been no concrete, factual showing that Carey had failed to fulfill his fiduciary obligations. However the Court warned Carey that 'his conduct must in all respects be responsible, impartial, and devoid of political motivation.'
 
 
 32
 Shortly thereafter, the Union petitioned the Court for reconsideration of its Order and brought additional matters to the Court's attention. Primarily, the Union showed that Carey had, since the prior hearing, become associated with a law firm which was then pursuing active litigation against the Union in a number of cases.[1] In addition the Court took notice of Carey's suit in his own behalf against the Union for damages arising from his removal as general counsel of the Union.
 
 
 33
 As to his association with the law firm, appellant claims that he later severed all connection with that firm, and that during his period of association he had merely leased office space. Further, appellant stated that he never became involved with any of the litigation concerning the Union. While all of these assertions may be true, appearance, in this instance, is more important than legal hairsplitting. The fact is that Carey, a known associate of the ousted W. A. Boyle, voluntarily created a relationship with a law firm which was openly and actively pursuing a variety of suits against the Union whose present management had defeated Boyle. Carey was using space in the law firm's office, had his name on the building directory, had a phone number that was listed under the firm name, and had circulated formal announcements of his association with the law firm. The fact that the liaison was terminated may be compared with word spoken in haste-- it can be retracted, but the effect remains. Here, the trial Court noted that such severance 'does not remove the suspicion and hostility that this obviously serious error of judgment perforce engenders.' We concur in that judgment.
 
 
 34
 Additional matters were also weighed by the District Court. Appellant had filed a suit for reinstatement, back wages, and punitive damages as a result of his dismissal as the Union's general counsel. While neither this Court nor the trial Court would contend that any Trustee of the Fund should be precluded from pursuing his legal rights, we feel that the present situation at best makes Carey a nominal antagonist to the current Union administration and at worst may embroil him in an extensive and particularly bitter adversary proceeding. The trial Court which also had the opportunity to judge the demeanor of appellant found that even outside the lawsuit appellant 'harbors intense antagonism towards the Union's present management.'
 
 
 35
 In view of the foregoing, we hold that the District Court did not abuse its discretion in removing appellant.
 
 
 36
 Finally, while appellant's bitterness and actions toward the Union management justified the trial Court in removing him as a Trustee, we are constrained to note that at no time during the stewardship of appellant as Trustee is there the slightest indicia or evidence of any improper action on his part as a manager of the Fund. His actions relating to the management of the Fund have at all times comported with the degree of care required of a Trustee.
 
 
 37
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to Title 28, U.S.Code Section 292(a)
 
 
 [1]
 The firm has for the most part represented former Union officials in the following actions:
 Yablonski v. UMWA (now Weaver v. UMWA) C.A. 3436-69
 Killion v. Miller C.A. 292-73
 UMWA v. Miners Loyalty Fund C.A. 1-73 United Mine Workers of America 205 NLRB No. 87