William H. WYNN, as Trustee of Retail Clerks Union Local 1146, Plaintiff,

v.

Bernard HELLER, Individually and as Trustee of Welfare Trust Fund No. 1146 and Pension Trust Fund No. 1146, Defendant.

No. 75 Civ. 291.

United States District Court, S. D. New York,

March 3, 1975.

**508**

Vladeck, Elias, Vladeck & Lewis, P. C., New York City, for plaintiff by Stephen C. Vladeck, Deborah A. Watarz, New York City, of counsel.

Bondy & Schloss, New York City, for defendant by I. Russell Stein, New York City, of counsel.

WHITMAN KNAPP, District Judge.

The plaintiff seeks preliminary relief removing defendant Heller as trustee and administrator of two local union

welfare trust funds and enjoining him from receiving any salary or remunerations from the two funds during the pendency of this action. Plaintiff's application to remove defendant Heller as trustee will be denied at this time, but the defendant will be enjoined from taking any salary or other remuneration from either fund.

## I. FACTS

This proceeding was brought to remove Heller as the trustee and administrator of the pension and welfare trust funds of Retail Clerks Union Local 1146. Local 1146 is the collective bargaining agent for employees in the paint, hardware, plumbing and heating industries in the New York metropolitan area. The local is an unincorporated labor association chartered by the Retail Clerks International Association, AFL–CIO. Plaintiff Wynn is vice president of the International and, pursuant to the International Constitution, has been appointed the trustee of the local union.[1] He is authorized to take complete charge of the affairs of the local. While the pension and welfare trust funds are for the benefit of the members of Local 1146, the funds are considered separate and distinct entities from the local union, and are independently administered.

The two trust funds here involved were created under collective bargaining agreements entered into by Local 1146 and certain employer organizations. The funds are authorized by Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5).[2] This provision excepts from the general prohibition of payments of money by an

---

[1] Wynn was appointed trustee of the local union in November, 1974. The stimulus for his appointment was the criminal indictment of the then-president of Local 1146, Martin Kornreich, for misuse of local union funds. Kornreich, along with the other officers, was suspended by the International as president of the local, and is now retired from the union. He is currently the defendant in a lawsuit brought by the officers of the International Union, entitled *Housewright et al. v. Kornreich et al.*, 74 Civ. 5095 (WK).

[2] The pertinent portion of § 186 reads as follows:

"(c) The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents) . . . ."

employer to a representative of his employees [3] payments made to a trust fund "for the sole and exclusive benefit of the employees" of the employer. The statute requires that the trust fund to which such payments are allowed be structured so that the employers and employees are equally represented in the fund's management.[4]

The trust agreement in this action complies with the equal representation requirement of Section 302. For each fund, Local 1146 and the signatory employers are each entitled to appoint one trustee. The two trustees together—one as the employee representative and the other as the employer representative—hold positions of fiduciary responsibility with full authority over the management of the funds. Defendant Heller was appointed by the union as its trustee to the Welfare Trust Fund in 1957, and as its trustee for the Pension Trust Fund in 1972. At the time Heller was appointed to his positions with the trust funds, the principal officer of the local union was Martin Kornreich. It was the criminal indictment of Kornreich in late 1974 that led to Wynn's appointment as trustee of the local union.[5] One of the allegations made by the plaintiff on this application for preliminary relief is that Heller's loyalties lie with Kornreich and the other union officers who were suspended by the International, and who are opposing parties to the plaintiff in another lawsuit before this court.

## II. PRELIMINARY INJUNCTION

█ In order to prevail on a motion for a preliminary injunction, the plaintiff must demonstrate both a probability of success on the merits and a likelihood that irreparable harm will result if such relief is denied. See, e. g. Lyons v. Weinberger (S.D.N.Y.1974) 376 F.Supp. 248; 7 Moore, Federal Practice ¶ 65.04 (1972 edition). We feel that plaintiff has met this burden with respect to its demand for an order restraining Heller from receiving salary out of the funds. We do not think, however, that a sufficient showing has been made to warrant Heller's removal as trustee at this time.

## III. DISCUSSION

Plaintiff sets forth two theories to justify his request for Heller's removal. First, he maintains that even in the absence of any finding of mismanagement of trust funds on Heller's part, the facts now before the court are sufficient to warrant a finding of suspicion and hostility between the new union leader and the union-designated trustee such as would warrant Heller's immediate removal. In support of this contention plaintiff relies on the recent case of Lamb v. Carey (C.A.D.C.1974) 498 F.2d 789, cert. denied 419 U.S. 869, 95 S.Ct. 128, 42 L.Ed.2d 108.

██ Plaintiff's second allegation is that Heller has committed breaches of fiduciary duty in the management of both trust funds. The illegal acts alleged concern Heller's acceptance of salary for his position as trustee of the two funds. The plaintiff argues that the taking of compensation violates the International Union's constitution,[6] and

---

3. See 29 U.S.C. § 186(a)(b).

4. 29 U.S.C. § 186(c)(5)(B).

5. See fn. 1, *supra*.

6. Section 34 of the International Constitution reads as follows:
   "Local union officers or employees, when serving as trustees of welfare and pension funds shall do so as representatives of the union and shall not receive any remuneration for services performed for such welfare and pension funds except for reasonable expenses incurred. Such union representatives shall report regularly to the local union respecting the status of the trust funds and all matters pertaining thereto."
   Because of the discussion which follows, see, *infra*, it is not necessary to reach the issue of whether Heller is precluded from taking salary by this provision.

further violates Section 302 of the Labor Management Relations Act.[7]

■ The first argument can be disposed of quickly. Although *Lamb v. Carey, supra,* does contain broad language which could be used to justify the removal of a trustee from a Section 302 trust upon a showing of intense antagonism between the union trustee and the union leadership, such relief does not appear appropriate on a motion for a preliminary injunction. In *Lamb* itself, removal was granted only after a full evidentiary hearing. Furthermore, since the *Lamb* result assumes that the trustee has managed the fund with the degree of care required of a trustee, it follows that there can be little irreparable harm if the relief requested is not granted. Where no fiduciary breaches have occurred, removal, if found warranted, must await a plenary evidentiary hearing. Such relief should not be granted solely upon just the affidavits of plaintiff and defendant.

Plaintiff's allegations of breaches of fiduciary duty, however, do raise substantial issues. The breaches alleged all relate to Heller's acceptance of compensation for his services as trustee to both trust funds. In his affidavit, Heller admits that in 1974 he received a total sum of $18,750 from the Welfare Trust Fund, ($4,500 of which was paid to him for his duties as Trustee and $14,250 as compensation for his duties as administrator), and $7,500 from the Pension Trust Fund ($2,500 as compensation for services as trustee, and $5,000 as compensation for services as administrator). The question that we must decide is whether these payments violated either Section 302 of the LMRA or the language of the applicable trust agreement itself. We find for the purposes of this preliminary motion that plaintiff will probably succeed in proving that Heller was not entitled to receive any compensation for his activities as trustee of either of the funds.

A. *The Welfare Trust Fund*

To justify his receipt of compensation from the Welfare Trust Fund, Heller relies exclusively on the following provision of the trust indenture (Article III, Section 5):

"The Trustees shall be reimbursed for all reasonable expenses which they may incur in the performance of their duties. They shall be compensated at the rate of five (5%) per cent each on all moneys and income received by the Fund, for executive, administrative and managerial services in connection with the direction, administration or operation of the Trust, the Fund or the Policies."

■ It appears to the court that the compensation proviso of the above section is in clear violation of the most fundamental requirement set forth in Section 302 of the LMRA—that any trust organized pursuant to that statute be for "the sole and exclusive benefit of the employees," 29 U.S.C. § 186(c)(5).

It seems beyond cavil that any trust set up so as to allow its two trustees to have an aggregate ten percent interest in "all moneys and income" received by the fund runs afoul of Section 302. As defendant Heller himself recognizes in his affidavit, under Article III, Section 5, each of the two trustees would be entitled to receive as annual compensation $98,274.15, or five percent each of the almost two million dollars which was added to the trust in the form of money

---

7. Although defendant has not raised any jurisdictional objections to this preliminary motion, it should be noted that Section 302(e) of the LMRA gives this court jurisdiction "to restrain violations of this section." While conduct constituting no more than a simple breach of fiduciary duty to a Section 302(c) trust does not come within the prohibition of the statute, *Haley v. Pal-* atnik (1975) 509 F.2d 1038, plaintiff's claim that the structure of the Welfare Trust Fund violates Section 302, see discussion III A, *infra,* is sufficient to confer jurisdiction. The other claims would be adjudicable under the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs* (1966) 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.

and income during the fiscal year ending June 30, 1974. Such compensation would be unconscionable for most trusts, and certainly for a Section 302 trust. The funds which make up this trust *res* are not paid to the trust as acts of beneficence, but rather to satisfy a contractual obligation owed by employers to a union and the employees so represented. Lamb v. Carey, *supra*, 498 F.2d at 793.

The fact that Heller received only $18,750 in salary from the Welfare Trust Fund is of no consequence. If the salary proviso is invalid, there is no other authorization for any compensation —other than the reimbursement for expenses—that can be found in the trust instrument.

■ In analyzing the problem before the court, it is important to emphasize that trust funds created pursuant to Section 302 of the LMRA must be strictly scrutinized. Such funds are unique in the sense that they are established under a specific exception to the LMRA. As the Supreme Court observed in Arroyo v. United States (1959) 359 U.S. 419, 425–26, 79 S.Ct. 864, 868–869, 3 L. Ed.2d 915:

> "Those members of Congress who supported the amendment were concerned with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control . . .
>
> "Congress believed that if welfare funds were established which did not define with specificity the benefits payable thereunder, a substantial danger existed that such funds might be employed to perpetrate control of union officers, for political purposes, or even for personal gain. . . . To remove these dangers, specific standards were established to assure that welfare funds would be established only for purposes which Congress con-

sidered proper and expended only for the purposes for which they were established."

■■ It seems axiomatic that Congress never intended that trustees (whether appointed by employers or employees) should themselves have a huge financial interest in the funds. While some reasonable compensation for services may be appropriate, giving trustees a percentage interest in the trust on all monies received by the trust, opens the door to the very dangers of kickbacks and extortion that Section 302 was designed to prevent. Above all, the fund must be administered for the benefit of the employees. To allow two trustees a ten percent interest in the fund simply contravenes that basic goal.

**B. The Pension Trust Fund**

A reading of the Pension Trust Fund indenture convinces the court that the plaintiff will succeed in establishing that Heller's taking of salary for his services as trustee of this fund was also inappropriate.

The Pension Trust Fund as originally prepared and signed in 1957 specifically provided that the Trustees should not receive any compensation for the performance of their duties as Trustees, and should only "be reimbursed for reasonable expenses they may incur in the performance of their duties." (Article III, Section 5). On August 23, 1972, the two trustees amended that section to read as follows:

> "The Trustees shall receive reasonable compensation for the performance of their duties as Trustees, and for executive, administrative and managerial services in connection with the direction, administration and/or operation of the Trust, the Fund or the Policies. The Trustees shall be reimbursed for all reasonable expenses which they may incur in the performance of their duties."

Defendant relies upon this amendment as the authorization for his receipt of $7,500 as salary from the pension fund.

Such reliance, however, is misplaced. The amendment, even if passed with notice to employers and the union, violates Article VI of the trust agreement. Section 1 of that provision permits amendments upon the concurrence of both trustees

"except that no amendment shall divert the Fund as then constituted, or any part thereof, to a purpose other than as set forth in Section 1 of Article II of this Agreement and Declaration of Trust . . . ."

It seems clear that the 1972 amendment does divert funds for purposes other than the benefit of the employees, i. e. for the purpose of paying salaries to the trustees. In light of the specific language prohibiting trustee salaries, any diversion of funds for the benefit of the trustees themselves must be invalid.[8] See, also, Poston v. Caraker (5th Cir. 1967) 378 F.2d 439.

## IV. RELIEF

Since the court has found that Heller's receipt of salary probably violates either Section 302 of the LMRA or the trust agreement itself, plaintiff's request for a preliminary order enjoining the receipt of compensation will be granted. We do not feel however, that Heller's removal as trustee is warranted at this juncture. Plaintiff has not alleged any breaches of fiduciary duty other than the taking of the salaries. There is no other evidence whatsoever that Heller has acted in derogation of his fiduciary responsibilities in the management of the funds.

Since both trust instruments state that "each trustee shall continue to serve as such until his death, resignation or removal for cause as herein provided," we feel that removal must await a plenary hearing. Although perhaps improbable, it is possible that Heller can establish that the taking of salary was a bona fide mistake of judgment which would not justify removal for cause. Finally, Heller having been enjoined from further receiving salary, plaintiff has not suggested what irreparable harm could come to the trust funds by allowing Heller to remain as trustee during the pendency of this lawsuit.

In the meantime, defendant Heller is directed to cooperate fully with plaintiff Wynn's request to examine the books and records in order to ascertain whether the trust funds' benefits are being properly administered in accordance with the collective bargaining contracts.

So ordered.

---

8. Even in the absence of such a specific prohibition, we can hardly believe that the power to amend the instrument by joint action of the agents of the two presumably antagonistic principals would be construed to include the power to amend for the *sole* benefit of the agents themselves.