**ASBESTOS WORKERS LOCAL UNION NO. 5, INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS, AFL–CIO; Asbestos Workers Local Union No. 7, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 16, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 28, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 36, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 69, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 73, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 76, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 82, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 97, I.A.H.F.I.A.W.; Asbestos Workers Local Union No. 135, I.A.H.F.I.A.W.; Ed Lontz, James W. Schwandt, Swede Berg, and William S. Hart, as the Union Trustees of the Western States Asbestos Pension Fund, Plaintiffs and Petitioners,**

v.

**WESTERN INSULATION CONTRACTORS ASSOCIATION (a Washington corporation); Scott Strawbridge, Richard Saiya, Robert Fults, and James Mokler, as the Employer Trustees of the Western States Asbestos Pension Fund; and Phillip J. Smith, Defendants and Respondents.**

**No. CIV. S–91–328 LKK.**

United States District Court, E.D. California.

Sept. 12, 1991.

Neil M. Goldstein, John J. Davis, Jr., McCarthy, Johnson & Miller, San Francisco, Cal., for plaintiffs and petitioners.

Ronald W. Novotny, Hill, Farrer & Burrill, Los Angeles, Cal., for defendants and respondents.

## ORDER

KARLTON, Chief Judge Emeritus.

This action arises out of a dispute between Union and Employer appointed trustees of the Western States Asbestos Pension Fund ("Fund").[1] Pursuant to 29 U.S.C. § 186(c), an impartial umpire[2] was appointed by the trustees to resolve their dispute. Plaintiffs' suit attacks the award of the impartial umpire[3]. Under that

---

1. The Fund is a pension fund created under the Labor Management Relations Act § 302, *codified at* 29 U.S.C. § 186, and is jointly administered by trustees appointed in equal numbers by employees and employers.

2. The statute employs the term "impartial umpire." The award at issue in the instant case, however, is referred to by the parties and the umpire as an "arbitrator's award." As I will explain in the text, the nature of the proceeding under § 302 differs from that of a § 301 arbitra-

tion. Accordingly, principles applicable in the traditional arbitration context do not necessarily pertain to a § 302 arbitration.

3. The suit also challenges the validity of certain Memoranda of Understanding entered into between the Western States Conference of Asbestos Workers ("Conference") and the defendant Western Insulation Contractors Association ("WICA").

award, all contributions received by the Fund for work performed after August 1, 1990 are to be credited to the Individual Account Plan[4] ("IAP") and no contributions are to be allocated to the Defined Benefit Plan ("Plan").

This matter is before the court on the motion of plaintiffs and petitioners for a preliminary injunction. For the reasons I explain below, the motion will be GRANTED.

## I

## PRELIMINARY INJUNCTION STANDARDS UNDER FED.R.CIV.P. 65

The purpose of the preliminary injunction as provided by Fed.R.Civ.P. 65 is to preserve the relative positions of the parties—the status quo ante—until a full trial on the merits can be conducted. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). The limited record usually available on such motions ordinarily renders a final decision on the merits inappropriate. *Brown v. Chote*, 411 U.S. 452, 456, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973).

"The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). In the Ninth Circuit, two interrelated tests exist for determining the propriety of the issuance of a preliminary injunction. Under the first test, the court may not issue a preliminary injunction unless each of the following requirements is satisfied: (1) the moving party has demonstrated a likelihood of success on the merits, (2) the moving party will suffer irreparable injury and has no adequate remedy at law if injunctive relief is not granted, (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and (4) granting the injunction is in the public interest. *Martin v. International Olympic Committee*, 740 F.2d 670, 674–75 (9th Cir.1984). Under the second "alternative" test, the court may not issue a preliminary injunction unless the moving party demonstrates "either a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* Under this part of the alternative test, even if the balance tips sharply in favor of the moving party, it must be shown at an "irreducible minimum" that there is a "fair chance of success" on the merits. *Id.* The moving party carries the burden of proof on each of these elements. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1203 (9th Cir.1980).

We are taught that the critical element of the determination is the relative hardship to the parties. *Lopez v. Heckler*, 725 F.2d 1489, 1498 (9th Cir.), *vacated on other grounds*, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984). Under the "alternative" test, the two tests are not separate and unrelated; each represents the "extremes of a single continuum." *Benda v. Grand Lodge of International Association of Machinists*, 584 F.2d 308, 315 (9th Cir.1978).

## II

## IRREPARABLE INJURY

■ Plaintiffs contend that they will suffer irreparable injury if a preliminary injunction does not issue because a consequence of the umpire's award is the termination of the Defined Benefit Plan. It appears that this contention is well-taken. Pursuant to 29 U.S.C. § 1341a(2), termination of a multiemployer pension plan occurs as the result of "the cessation of the obligation of all employers to contribute under the plan." The date of termination is the first day of the first plan year for which no employer contributions were required. 29 U.S.C. § 1341a(b)(2)(B). Under

4. The Individual Account Plan is also referred to in various collective bargaining agreements

that are the subject of this suit as the Defined Contribution Plan.

the umpire's decision of December 19, 1990, all contributions are to be made to the Individual Account Plan and thus no contributions will be directed to the Defined Benefit Plan. Accordingly, by operation of law, the Plan would terminate on January 1, 1991.[5]

The effect of the Plan's termination appears to be quite serious. Under the regulations governing termination of pension plans, 29 C.F.R. § 2675.1 *et seq.*, the plan sponsor may not pay forfeitable benefits except in certain limited circumstances. 29 C.F.R. § 2675.12(c). Among the forfeitable benefits subject to loss in the instant case are disability benefits (payable to beneficiaries prior to normal retirement age), the service pension (also known as the "thirty-five-and-out" benefit), early retirement pensions for participants between the ages of 55 and 62, and the pre-retirement death benefit. Complaint ¶ 29. Plaintiffs aver that but for this court's temporary restraining order, they would have suffered the loss of these benefits. *See* First Schwandt Decl. ¶¶ 6–7. In light of the nature of the work in which the beneficiaries of the Fund engage (asbestos work), it appears that the loss of these forfeitable benefits works a particularly pernicious injury.

■ Defendants' contention that the plaintiff unions lack standing to assert the harm suffered by their members is utterly without merit. It is perhaps not surprising that defendants cite no authority in support of this contention since it is well-established that an organization has standing to seek judicial review for the injuries suffered by its members.[6] *See Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975); *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America v. Brock,* 477 U.S. 274, 288–90, 106 S.Ct. 2523, 2531–33, 91 L.Ed.2d 228 (1986). The High Court teaches that an association has standing to sue when its members would have standing to sue in their own right, the interests sought to be protected are germane to the organization's purpose, and the participation of individual members in the lawsuit is not required. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). *See also California Rural Legal Assistance v. Legal Services Corp.,* 917 F.2d 1171 (9th Cir.1990).

It is apparent under the test described above that the plaintiff unions have standing to assert the harm caused its members by the loss of forfeitable benefits. First, it appears undisputed that the beneficiaries, i.e., the union members, would have standing to assert their own individuated harm caused by the loss of forfeitable benefits. Securing disability and pension benefits is a traditional purpose of labor unions, thus satisfying the second leg of the test. Finally, there is no suggestion that participation by individual union members is necessary to this action.

Defendants also contend that the asserted injuries are illusory because there exists a possibility that the Pension Benefit Guaranty Corporation ("PBGC") would authorize the payment of forfeitable benefits. I begin by noting that the test is framed in terms of threatened injury and the fact that the PBGC might authorize payment hardly constitutes an absence of such a threat or its imminence. Moreover, while it is true that under certain circumstances the PBGC may authorize the payment of forfeitable benefits, *see* 29 C.F.R. § 2675.-17, there is no evidence in the record presently before the court that such authorization is likely to be obtained. Indeed, at the

---

**5.** This result was avoided by this court's previous order.

**6.** Having cited no authority for their attack on standing, it is unclear to the court whether defendants challenge plaintiffs' standing in the Article III sense or whether the attack is based on the unions' lack of contractual authority to bring suit. *See American Postal Workers Union of Los Angeles, AFL–CIO v. U.S. Postal Serv.,* 861

F.2d 211, 213–14 (9th Cir.1988); *American Postal Workers Union, AFL–CIO v. U.S. Postal Serv.,* 823 F.2d 466, 477 (11th Cir.1987). Since it is undisputed that the plaintiff unions are authorized collective bargaining agents, presumably defendants' challenge is based on the constitutional doctrine of standing. As I explain in the text, this argument cannot lie.

hearing on the motion for preliminary injunction, plaintiffs' counsel represented to the court that the PBGC had informed them that payment of forfeitable benefits pursuant to 29 C.F.R. § 2675.17 had been previously authorized just two times. Finally, although defendants represent that efforts are presently being made to determine a means by which the forfeitable benefits could be provided under the IAP, these efforts have not as yet borne fruit. As noted above, but for this court's previous order, participants in the Plan would suffer the loss of forfeitable benefits. Hypothetical solutions cannot obviate the harm these plaintiffs presently face.

Plaintiffs also face a second potentially serious injury. Where, as here, there appears to be no question regarding the ability of the Plan to pay vested rights, the corpus of the trust must first be used to purchase annuities covering all fully vested benefits. *See* PBGC Opinion 82–24. The remainder of the corpus is then used to purchase annuities providing partial benefits for those rights not fully vested. It seems relatively clear that such a process will take time. From all that appears, however, in the absence of injunctive relief, the procedure to terminate the Plan will progress to its final stages. In that situation, plaintiffs will lose the benefit of the pooled fund. *Cf. Foltz v. U.S. News & World Report,* 760 F.2d 1300 (D.C.Cir. 1985). If this court subsequently determines that the umpire's decision must be vacated and that contributions must be allocated to the Defined Benefit Plan, plaintiffs' victory will be an empty one if the Plan has been gutted.

We are taught that the critical element in deciding whether injunctive relief is appropriate is the relative hardships to the parties. *Lopez v. Heckler,* 725 F.2d 1489, 1498 (9th Cir.1984). In the matter at bar, it does not appear that the employers will be subject to harm if the interim relief requested is granted. The same amount of contribution will be required regardless of whether this court directs that some of the contribu-

tions be allocated to the Defined Benefit Plan. Defendants suggest that if the Plan proceeds to termination, they will no longer be subjected to withdrawal liability [7] and that under the requested relief, they will lose that benefit. Plaintiffs aver that they have repeatedly offered to insure defendants against any withdrawal liability. Schwandt Third Decl. ¶ 4. Moreover, defendants themselves contend that the Plan is overfunded, rather than underfunded. *See* Defendants' Memorandum in Opposition to Motion for Preliminary Injunction at 33:13–15. The potential harm to the employers appears to be remote. Because of the serious consequences that plaintiffs face if injunctive relief is not granted, I find that the balance of hardships tips sharply in favor of plaintiffs.

## III

## PROBABILITY OF SUCCESS ON THE MERITS

With the decided tipping of the hardships in favor of plaintiffs noted above, they need only show that questions have been raised which are serious enough to require litigation to demonstrate entitlement to a preliminary injunction. *See Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers,* 584 F.2d 308, 315 (9th Cir.1978). As I explain below, plaintiffs have more than met this standard.

### A. *Jurisdiction*

Defendants suggest that plaintiffs cannot prevail on the merits because this court may lack jurisdiction to entertain these claims. Although the matter has not been fully briefed by the parties, this court has a duty to inquire into the alleged jurisdictional basis. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 287 n. 10, 58 S.Ct. 586, 589 n. 10, 82 L.Ed. 845 (1938). The court's independent consideration of this issue suggests defendants' claim is without merit because jurisdiction in this case as to certain claims properly rests on

---

**7.** Employers withdrawing from a multiemployer plan are liable for a proportional amount of the unfunded vested benefits. *See* 29 U.S.C. §§ 1381 *et seq.*

29 U.S.C. § 185, while other claims properly rest on 29 U.S.C. § 186.

■ The complaint alleges claims relating to the invalidity of certain Memoranda of Agreement (MOA) entered into between the Conference and WICA and asserts the enforceability of the plaintiff unions' collective bargaining agreements. As to those claims, the complaint premises jurisdiction on 29 U.S.C. § 185. Jurisdiction is properly founded under that section where there is (1) a contract, (2) a claim for violation, and (3) a "between" employer and labor organization or "between" labor organizations element. *Alvares v. Erickson,* 514 F.2d 156, 161 (9th Cir.1975), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). In the instant case, plaintiffs meet the requisites for jurisdiction under § 185 by alleging that their collective bargaining agreements are being breached.

■ The sixth claim for relief to vacate the arbitrator's award is predicated on 29 U.S.C. § 186. In relevant part, 29 U.S.C. § 186(c) authorizes employers and unions to set up jointly administered pension plans and provides that contributions to such plans must be made "for the sole and exclusive benefit of the employees ... and their families and dependents." The court is granted jurisdiction "to restrain violations of this section," 29 U.S.C. § 186(e), although the statute does not expressly provide for judicial review of the decisions made by trustees or neutral umpires. The courts have adopted an arbitrary and capricious standard for review of trustees' decisions. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). In the Ninth Circuit, a "structural" defect test has been developed to ascertain whether jurisdiction is properly founded under section 302. *See Elser v. I.A.M. Nat. Pension Fund,* 684 F.2d 648 (9th Cir.1982), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). A "structural" defect exists where the trustees, "acting under the authority of the trust fund, 'arbitrarily and capriciously' den[y] pensions to employees." *Ponce v.*

*Const. Laborers Pension Trust for Southern Cal.,* 628 F.2d 537, 541 (9th Cir.1980). In the instant case, plaintiffs allege that by virtue of the umpire's decision, they have been arbitrarily and capriciously denied benefits in manifest disregard of the law. Accordingly, jurisdiction under § 186 has been properly invoked.

### B. *Success on the Substantive Claim*

Plaintiffs allege six claims for relief. The first five causes of actions entail various claims relating to purported memoranda of agreement ("MOA") between the Conference and WICA. In the sixth claim for relief, plaintiffs seek to vacate the umpire's decision [8]. It appears to the court that the sixth cause of action is the linchpin for analysis of the propriety of preliminary injunctive relief.

The asserted irreparable injury in the matter at bar flows from the umpire's decision that henceforth all contributions received by the Fund shall be allocated to the IAP. If plaintiffs do not succeed on the merits of the claim to vacate the umpire's award, then the Trustees of the Fund will direct all contributions in accordance with the umpire's decision and the Defined Benefit Plan would proceed to termination. In that scenario, the first five claims become irrelevant to the asserted injury. Even if plaintiffs were to succeed on any of the first five claims, there would be no Defined Benefit Plan to which contributions could be allocated. Accordingly, I turn to the question of whether plaintiffs have demonstrated the irreducible minimum of a fair chance of success on the merits of the sixth claim for relief.

The issue that I must first address is the nature of the decision that plaintiffs seek to vacate. The union and employer trustees of the Fund at issue in this matter had reached a deadlock as to the proper allocation of contributions received from participating employers. This impasse was reached because of conflicting provisions in the collective bargaining agreements of the

---

**8.** As noted above, both sides and the umpire himself refer to the decision as an arbitrator's award. As I also noted, such a characterization is inappropriate.

local unions [9] and certain MOAs [10] between the Conference and WICA. To the extent that the umpire was casting a deadlock breaking vote in administration of the trust, authority was properly vested in the umpire pursuant to 29 U.S.C. § 302(c). The umpire observed, however, that neither he nor the trustees had authority or jurisdiction to settle a collective bargaining dispute. *See* Arbitrator's Opinion and Award at 18. As I now explain, that observation was not only correct, it raises serious questions about the propriety of the decision.

Under the Labor Management Relations Act § 301, *codified at* 29 U.S.C. § 185, the parties to a collective bargaining agreement are free to submit their disputes to arbitration or alternatively, if arbitration is not contractually agreed upon, to have their rights adjudicated in federal court. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Submission of a trustees' deadlock to a neutral umpire, however, is statutorily mandated. 29 U.S.C. § 186(c)(5)(B). To insure that the statutorily mandated umpire mode of resolution of pension issues does not interfere with the rights of parties to collective bargaining agreements to choose either arbitration or litigation, the scope of the neutral umpire's authority must be carefully constrained to issues within the trustee's domain. Put another way, matters submitted to a neutral umpire pursuant to § 302 can encompass only those within the statutory ambit, i.e., matters of trust administration. If the reach of the umpire's decision were not thus foreshortened, arbitration of some labor disputes might no longer be a matter of contractual agreement in violation of the provisions of § 301. As I now explain, the limitation on the reach of the umpire's decision gives rise to serious questions as to the propriety of the decision.

■ Before resolving the question of the propriety of the umpire's decision, I must first determine the appropriate standard for reviewing matters properly committed to his deadlock breaking power. I begin by noting that a decision of the trustees concerning matters committed to their discretion may be reversed only where it is "arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *See Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir. 1976); *Elser v. I.A.M. Nat. Pension Fund,* 684 F.2d 648, 654 (9th Cir.1982). It appears that this deferential standard is appropriate when reviewing the neutral umpire's decision as well. As I previously observed, only those matters which involve trust administration, i.e., matters committed to trustee discretion, may be submitted for decision by a neutral umpire. It follows, then, that if the trustees' decisions are subject only to a deferential standard of review, no more onerous standard should apply to a decision made within the same parameters as that of the trustees. *See British Motor Car Distributors Ltd. v. San Francisco Automotive Industries Welfare Fund,* 882 F.2d 371, 378 n. 11 (9th Cir.1989) (noting that the same standard should apply to review of a neutral umpire's decision).

Plaintiffs contend that even under this deferential standard, this court should vacate the arbitrator's award. I conclude that plaintiffs have a fair chance of suc-

---

**9.** The collective bargaining agreements between the local unions and WICA employers expressly provide that contributions shall be made to the Defined Benefit Plan. *See, e.g.,* Arbitration Record Joint Exh. 22 at p. 19 (Local 5), Joint Exh. 23 at table A (Local 7), Joint Exh. 24 at p. 10 (Local 16), Joint Exh. 25 at p. 5 (Local 28), Joint Exh. 27 at p. 8 (Local 69). The collective bargaining agreements between the local unions and non-WICA employers (independent insulation contractors) also contain express provisions regarding the Defined Benefit Plan. *See, e.g.,* Plaintiffs' Exh. 25 at p. 13 (Local 7), Plaintiffs' Exh. 26A (Local 16), Plaintiffs' Exh. 26B at 7 (Local 16 Hazardous Waste Agreement).

**10.** The 1982 and 1984 MOAs provide that contributions shall be paid into a defined contribution plan after August 1, 1990. *See* Plaintiffs' Exh. 9 at Art. I § 1 (1982 MOA provides for payment into supplemental pension plan); Plaintiffs' Exh. 15 at Art. I § 1 (1984 MOA provides for payment into individual account plan).

ceeding on this claim. Trustees of § 302 trusts are bound by common law fiduciary duties, *see N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981), *reh'g. denied*, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981), and must act with the highest fiduciary integrity toward the beneficiaries of the trust. *Lamb v. Carey*, 498 F.2d 789 (D.C.Cir.), *cert. denied*, 419 U.S. 869, 95 S.Ct. 128, 42 L.Ed.2d 108 (1974). Their trust duties are defined by traditional equitable principles. *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industry of Southern California*, 703 F.2d 386 (9th Cir.1983). As I now explain, there is a substantial question as to whether the trustees can comply with their common law duties under the umpire's decision.

Under the decision, all contributions received by the Fund are to be allocated to the Individual Account Plan. However, the collective bargaining agreements, pursuant to which the contributions were made by the employers,[11] expressly provide that the contributions are to be made to the Defined Benefit Plan.[12] The effect of the decision, therefore, appears to compel a violation of the trustees' fiduciary duties, i.e., accepting money given for one purpose and devoting it to another.[13] *See generally* Restatement (Second) of Trusts §§ 4, 164, 186. Such a result cannot be sustained because it is erroneous on a question of law. *See Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir.1976). Moreover, to the extent that the umpire's decision is premised on his reading of the MOAs as modifying the individual collective bargaining agreements, it cannot be sustained because it resolves a collective bargaining dispute which, as noted above, is beyond his jurisdiction. I conclude, therefore, that plaintiffs have raised questions serious enough to require litigation with respect to the sixth claim for relief.

Although plaintiffs may be entitled to vacation of the arbitrators' award, they must further demonstrate a likelihood of prevailing on at least one of the claims for relief alleged in the complaint relative to the invalidity of the MOAs and the continuing enforceability of the local collective bargaining agreements. Even though the umpire was without jurisdiction to resolve the collective bargaining dispute which is the gravamen of the first five claims for relief[14], if this court subsequently determines, upon *de novo* review, that the local collective bargaining agreements are not binding and are superseded by the MOAs, the trustees would then apparently be free to allocate all contributions to the IAP and the Defined Benefit Plan would proceed to termination by operation of law because of the cessation of contributions. If, however, plaintiffs succeed on any of the first

11. Under the Trust Agreement, the employer is to pay to the trust such amounts as are "agreed to in the collective bargaining agreements between the parties to such agreement and such contributions shall be made in accordance with the collective bargaining agreements, this Trust Agreement, and such regulations of the Board of Trustees as are not inconsistent therewith." Trust Agreement, Art. V, § 5.1.

The Trust Agreement further provides that "the amount of contributions ... shall be vested solely to the committments [sic] contained in the collective bargaining agreements had between any or all participating employers and the unions acting as the agent and binding thereby the rights and privileges of its members." Trust Agreement, Art. XII, § 12.1.

12. *See* footnote 7.

13. Put another way, the Trustees may have the power to refuse to accept a contribution, but having accepted a contribution earmarked for a specific plan, they cannot then allocate that contribution to another plan. Although the trust agreement empowers the trustees to adopt different pension plans and permits them to require that contributions for a particular plan be uniform, *see* Trust Agreement § 11.6, there is no suggestion in the terms of the trust that the trustees may take monies intended for one benefit plan and then direct them to a different plan.

14. Although defendants contend the first five claims are barred by res judicata, it does not appear that this argument can be sustained. One of the fundamental precepts of res judicata is that a judgment rendered by a court without jurisdiction over the subject matter has no preclusive effect. *See Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 281, 100 S.Ct. 2647, 2660, 65 L.Ed.2d 757 (1980); *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

five claims for relief, then the trustees, bound by their fiduciary duty, will be obliged to allocate some contributions to the Defined Benefit Plan.

It appears that plaintiffs at least raise a serious challenge relative to the fifth claim for relief in which it is alleged that a majority of the employers signatory to collective bargaining agreements with the plaintiff local unions are non-WICA members and that those employers have authorized neither WICA nor its local chapters to bargain on their behalf. The MOA's by their terms purport to bind only employers represented by WICA. *See* 1982, 1984 MOAs, p. 1 ¶ 1, Art. V § 2. Defendants contend that by virtue of certain "Acceptance of Trust" forms, non-WICA employers are bound to collective bargaining agreements entered into between WICA and the Conference. Defendants aver that the "Acceptance of Trust" forms are required to be executed by all employers making contributions to the Fund. Fults Decl. ¶ 2. While such contentions are relevant to plaintiffs' allegations, they are hardly dispositive. First, it is not at all apparent to the court that the bilateral contract between the local unions and non-WICA employers can be modified unilaterally by non-WICA employers signing an acceptance of trust. Moreover, plaintiffs aver that only a few employers have in fact signed the forms, none of which is countersigned on behalf of the local union. *See* Third Schwandt Decl. ¶ 1. It appears that under these circumstances, plaintiffs have at least raised litigable issues with respect to the fifth claim for relief.

Because the balance of hardships tilts sharply in favor of plaintiffs and serious questions have been raised relative to the claims to vacate the arbitrator's award and the continuing enforceability of the collective bargaining agreements with non-WICA employers which require that contributions be made to the Defined Benefit Plan, I conclude that a preliminary injunction should issue. Accordingly, plaintiffs having given security in the amount of Fifteen Thousand Dollars ($15,000) as approved by the court for the payment of such costs and damages as may be incurred or suffered by any party wrongfully restrained, IT IS HEREBY ORDERED that the defendants, their agents, employees, and attorneys, and all persons acting in concert or participation with them, be and hereby are restrained from:

1. Taking any action to terminate the Western States Asbestos Pension Fund's Defined Benefit Plan;

2. Refusing to deposit in said Defined Benefit Plan, in the same manner as before August 1, 1990, those employer Pension Fund contributions received after April 4, 1991;

3. Taking any action to forfeit non-vested rights accorded under the Defined Benefit Plan;

4. Failing to give vesting credits and benefit credits under the Defined Benefit Plan for contributions received after April 4, 1990, in the same manner as before August 1, 1990 to Plan participants;

5. This order is subject to plaintiffs' stipulation that it will hold the defendants harmless from any withdrawal liability occasioned by the order.

IT IS FURTHER ORDERED that this preliminary injunction shall remain in effect until the court rules on plaintiffs' and petitioners' prayer for a permanent injunction, but shall be subject to modification for good cause shown.

IT IS SO ORDERED.

