Angus M. MacNEIL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 5094.

United States Court of Appeals
First Circuit.

Heard June 6, 1956.

Decided Aug. 10, 1956.

Rehearing Denied Aug. 15, 1956.

Writ of Certiorari Denied Nov. 13, 1956.
See 77 S.Ct. 150.

Angus M. MacNeil, Somerville, Mass., pro se.

Maurice P. Bois, U. S. Atty., Concord, N. H., with whom William Maynard, Asst. U. S. Atty., Plymouth, N. H., was on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered January 4, 1956, in the United States District Court for the District of New Hampshire whereby the defendant was adjudged in civil contempt and ordered committed to custody until such time as he should comply with the Court's order to return to William H. Craig, Jr., Receiver, the sum of $473.09. The defendant was further adjudged guilty of criminal contempt and ordered to pay to the clerk of the court a fine of $400, together with costs in the amount of $137.59, and to stand committed until the sentence be performed.

The following quotation from the opinion of the trial judge provides a convenient statement of most of the relevant facts.

"This action was brought to foreclose a mortgage upon a multiunit housing project situated in Manchester. Garden Homes, Inc., the mortgagor, remained in possession of the premises pending adjudication of the issues, and a receiver for rents and profits was appointed, with authority to reimburse the mortgagor for the necessary expenses incurred in the maintenance and operation of the project. This procedure proved unsatisfactory to Garden Homes, and, claiming it was a hardship to require it to pay these expenses in the first instance, it petitioned this court to instruct the receiver to make payments to it for maintenance upon presentation of proper vouchers detailing the debts incurred. On September 17, 1953, the following order was entered: 'Upon consideration of defendant's motion for instructions, filed August 10, 1953, the receiver, William H. Craig, Jr., and counsel for defendant are directed that payments for maintenance, care, and operation of the property of the corporation are to be paid by the receiver, upon presentation to him of payroll accounts and outstanding bills, if it appears to the receiver that such expenditures have been incurred in the operation of the project and receipts are furnished for all prior payments of similar charges.'

"It appears that Garden Homes, Inc. was justly indebted to J. J. Moreau & Son, Inc. in the amount of $369.33 for goods used in the maintenance of the project, and to one Joseph Pepin in the sum of $44.-

'64 and one Sal Toscano in the amount of $59.12 for maintenance services. Upon receipt of a proper voucher, signed and certified by Angus M. MacNeil, the receiver, in accordance with the order of September 17, 1953, gave Garden Homes, Inc. sufficient funds with which to satisfy the above debts. The attention of the court was directed to the failure of Garden Homes, Inc. to disburse these funds to the creditors at a hearing held June 27, 1955, upon, inter alia, the receiver's final report. MacNeil was present at this hearing and the court directed as follows: 'I am going to give you twenty days to produce that money or issue a citation for you to show cause why you shouldn't be cited for contempt' and Garden Homes, Inc. was informed of this directive. On November 15, 1955, in open court, the court inquired of MacNeil whether its directive had been complied with, and, advised that it had not, gave him notice, pursuant to Rule 42(b) of Federal Rules of Criminal Procedure, that a hearing would be held to determine whether he was guilty of civil and criminal contempt. The court stated the essential facts constituting the offense charged."

It further appears from the record that bad checks drawn in favor of Pepin and Toscano in the amounts of $44.60 and $59.12 respectively and signed Somerville Milling Company by Angus M. MacNeil were cashed for the drawees by Champagne's Super Market which at the time of the trial had not attempted to obtain restitution from the drawees and had been unable to collect from the drawer.

The record further shows that the defendant attempted to elicit testimony to the effect that Garden Homes, Inc. delivered merchandise to J. J. Moreau and Sons, Inc. in excess of $369, it apparently being contended that the bill in that amount had thereupon been paid.

Still further we think it should be noted that this entire proceeding in its civil as well as criminal aspect was initiated by the trial judge entirely on his own motion without application by any party to the original foreclosure action.

Defendant contends that there was no valid order which was legally entered upon which a contempt could be predicated. We do not agree. The order of September 13, 1953, although ostensibly directed toward the receiver, clearly contemplated that all funds paid over would be applied by the defendant to the payment of bills approved by the receiver.

Defendant further contends that there was no notification and information of the crime charged as required by law. We find no merit in this contention. The defendant was apprised by the trial judge in open court as follows:

"I will correct that, I am going to give you plenty of time for doing those things. I am going to have the United States Attorney proceed under the process for civil and criminal contempt, under Rule 42. Under that rule, I will give you notice —December 12th, at 11:00 a. m. You will have reasonable time for the preparation of the defense which you say you have, and the essential facts that are to be considered is the order of June 27th—I think that is the date of the order, isn't it? June 27th, 1955. And your failure to comply with the order of the Court, which was—under date of September 17, 1953. I will read it to you so that you will have full concept of what it was: 'Upon consideration of the defendant's motion for instructions (that means, of course, Garden Homes) filed August 10, 1953, the receiver, William H. Craig, Jr. and counsel for the defendant, are directed that payments for maintenance, care and operation of the property of the corporation are to be paid by the receiver upon presentation to him of payroll accounts and outstanding bills, if it appears to the receiver

that such expenditures have been incurred in the operation of the project, and receipts are furnished for all prior payments of similar charges.' That is the order that went out under my signature. Now, those are the essential facts upon which you will be proceeded against, Mr. MacNeil. Let me add parenthetically that I have no desire to hold you in contempt—not any. I do feel, however, that you should comply with the agreement which you made with this court and which you operated under for so many months without any question. There is the picture. I want to give you opportunity to prepare yourself and to take up this matter. I would rather not have this unpleasantness arise. If you can establish that you are not liable for those items, all well and good."

■ This was a clear compliance with Rule 42(b), F.R.Cr.P. 18 U.S.C. which provides in part:

"A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. * * *"

Defendant's contention that hearings were held in his absence is disproved by the record and merits no serious consideration.

■ Likewise without merit is the contention that defendant was subjected to double jeopardy in violation of law by the court's action in vacating the verdicts of December 30, 1955, wherein defend-

ant was found guilty of civil and criminal contempt, and the substitution therefor on January 4, 1956, of a sentence to the following effect:

"* * * I am now making a guilty finding in criminal contempt and I am finding you in civil contempt, which is reflected by my findings this day which have been reduced to an opinion, and which I will hand you a copy."

This amounts to nothing more serious than changing the date of the findings. No substantial changes were introduced and the defendant has not been prejudiced. Although the opinion of January 4, 1956, which was incorporated by reference into the judgment of the same date emphasized that the defendant was not personally liable for the payments ordered, this was apparently done out of an abundance of caution since the verdict of December 30 did not in any way imply a personal obligation. Parker v. United States, 1 Cir., 1942, 126 F.2d 370.

We defer momentarily our consideration of defendant's contention that there was no loss complained of by the plaintiff, preferring to treat it in conjunction with the additional contention that the court took a very interested position and was the real prosecutor.

■ Accordingly we turn now to the contention that the defendant was given no opportunity to plead to the charges or to obtain copies of charges. It has already been established that defendant was apprised of all charges against him and that no written notice was required under Rule 42(b). "* * * The proceeding is summary in character, and technical pleadings are not required, but it is sufficient that by petition, affidavit, or other showing it is made to appear that there has been a willful violation of the court's order. To this pleading, whatever it may be, it would be proper for defendants to file a formal answer, if they so desire." Hammond Lumber Co. v. Sailors' Union of the Pacific, C.C. N.D.Cal.1906, 149 F. 577, 580. The record in the instant case does not reveal

that the defendant attempted to make a formal answer or that he was deprived of an opportunity to do so.

There is no merit in the further contention that the finding and sentence were for matters not charged.

■ We turn finally to a consideration of the related contentions that there was no loss complained of by the plaintiff and that the court took a very interested position and was the real prosecutor. With respect to the criminal aspect of this case these contentions are clearly without merit. "It becomes the duty of the judge to take affirmative action when the lawful commands of the court are defied; and it was not the purpose of Rule 42(b) to limit the authority of the judge or to make the institution of a contempt proceeding contingent upon the consent of any attorney, but rather to aid the judge by providing for the prosecution of the charge by an attorney rather than by the court." In Re Fletcher, 4 Cir., 1954, 216 F.2d 915, 917.

In Fletcher v. United States, 4 Cir., 1949, 174 F.2d 373, 376, the court said:

"* * * It is expressly provided by statute that the court shall have power to punish by fine or imprisonment the contempt involved in disobedience of its orders, 18 U.S. C.A. § 401(3); and there is nothing in the statute which limits the power of the court to cases commenced by the complaint or affidavit of another person. * * *"

It becomes important in this connection to note the fundamental distinction between criminal and civil contempt. In re Nevitt, 8 Cir., 1902, 117 F. 448, 458, contains the following language:

"Proceedings for contempts are of two classes,—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. * * *"

In Kreplik v. Couch Patents Co., 1 Cir., 1911, 190 F. 565, 569, the court said:

"The courts of the United States recognize that the process of contempt has two distinct aspects—one criminal, to punish disobedience; and the other remedial and civil to enforce a decree of the court, and to compensate private persons. * * * The court clearly draws the vital distinction between proceedings for civil contempt, which are between the original parties, and proceedings at law for criminal contempt, which are between the public and the defendant. * * *"

■ Although there does not appear to be much express authority on the point, we believe that logic, and to some extent precedent as well, supports the proposition that civil contempt proceedings may be instituted only by the parties primarily in interest.

In re Paleais, 2 Cir., 1924, 296 F. 403, 407, contains the following language:

"The general rule is that a proceeding for contempt to enforce a civil remedy can be instituted by an aggrieved party, or by one who succeeds to his rights, or by one who has a pecuniary interest in the right to be protected. * * *"

In Secor v. Singleton, C.C.E.D.Mo. 1888, 35 F. 376, 378, the court said:

"* * * When an injunction has been granted, as in this instance, in a suit between individuals

to protect one of the parties in the enjoyment of some private right, immunity, or franchise, it seems to be the rule that no one can complain of a violation of the same, unless it be some one who has a present interest in maintaining the injunction, nor unless he was a party to the suit in which the order was obtained, or for some reason stands in privity with one who was a party to the litigation. In cases where an injunction has been granted to enforce or maintain a merely private right, a proceeding instituted to punish a party for violating the order is very generally regarded as a proceeding to redress a private injury in which the public have no concern, and for that reason the prosecutor or person filing the information must have an interest in the proceeding differing from that of the general public; otherwise the courts will not entertain the information. \* \* \* "

The following statement appears in an article entitled Civil and Criminal Contempt in Federal Courts, 17 F.R.D. 167, 172:

"An action for civil contempt can only be commenced by an aggrieved party or by someone who has an interest in the right to be protected. Federal Trade Commission v. A. McLean & Son, 7 Cir., 1938, 94 F.2d 802; Bowles v. Camillaci, D.C. W.D.N.Y.1943, 53 F.Supp. 976. A proceeding for criminal contempt, on the other hand, can be commenced by the government, on its own initiative or on the relation of an individual who need not have an interest in the enforcement of the order violated, or by the court on its own motion, Fed.R.Crim.P. 42 (b)."

■ It would appear from these authorities, and indeed from the very nature of the judicial function, that the trial court can have only a public as distinguished from a private interest in the enforcement of its own decrees. It seems to us, therefore, that regardless of what label may be appended to the proceedings by the court, any action of contempt initiated by the court of its own motion must be regarded as criminal in nature for the vindication of the court's authority and the punishment of the public wrong. "A civil contempt proceeding is wholly remedial, to serve only the purposes of the complainant, not to deter offenses against the public or to vindicate the authority of the court." United States v. International Union, etc., 1951, 88 U.S.App.D.C. 341, 190 F.2d 865, 873.

We find support for this position in the language of Title 18 U.S.C. § 401:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

■ It is clear that in a criminal contempt proceeding both a fine and imprisonment may not be imposed for a single act of contempt. Carter v. United States, 5 Cir., 1943, 135 F.2d 858. It is equally clear that both may be imposed where the same act constitutes civil and criminal contempt. So long as civil contempts are restricted to those initiated by the parties primarily in interest we see nothing objectionable in the double sentence—one remedial, the other punitive. We believe, however, that such a double sentence is not proper where the parties primarily in interest have not complained and where the trial judge, in effect, seeks to turn the remedial sentence for civil contempt into additional

punishment for an offense to the public interest. If the court may accomplish this by merely adding the word "civil" to his charge of criminal contempt then the provisions of § 401 become meaningless.

 Perhaps it should be noted that the language in United States v. United Mine Workers, 1947, 330 U.S. 258, 301, 302, 67 S.Ct. 677, 700, 91 L. Ed. 884, lends inferential support to our position:

> "Apart from their contentions concerning the formal aspects of the proceedings below, defendants insist upon the inability of the United States to secure relief by way of civil contempt in this case, and would limit the right to proceed by civil contempt to situations in which the United States is enforcing a statute expressly allowing resort to the courts for enforcement of statutory orders. McCrone v. United States, 1939, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108, however, rests upon no such narrow ground, for the Court there said that 'Article 3, Section 2, of the Constitution, U.S.C.A. expressly contemplates the United States as a party to civil proceedings by extending the jurisdiction of the federal judiciary "to Controversies to which the United States shall be a Party."' Id., 307 U.S. at page 63, 59 S.Ct. at page 686. The United States was fully entitled to bring the present suit and to benefit from orders entered in its behalf. We will not reduce the practical value of the relief granted by limiting the United States, when the orders have been disobeyed, to a proceeding in criminal contempt, and by denying to the Government the civil remedies enjoyed by other litigants, including the opportunity to demonstrate that disobedience has occasioned loss."

We think this language implies that if the United States were denied the civil remedies enjoyed by other litigants there could be no civil aspect to that case—in other words the language seems to exclude any possibility that the court could initiate civil proceedings on its own motion.

The judgment of the district court finding that MacNeil is in violation of Title 18 U.S.C. § 401(2) and (3) is affirmed and that part of the judgment finding MacNeil to be in civil contempt is reversed.