N. W. CONTROLS, INC., a Pennsylvania
corporation, Plaintiff,

v.

OUTBOARD MARINE CORPORATION,
a Delaware corporation, Defendant.

Civ. A. No. 3730.

United States District Court,
D. Delaware.

Oct. 18, 1972.

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., and John T. Synnestvedt and J. Donald McCarthy, of Synnestvedt & Lechner, Philadelphia, Pa., of counsel, for plaintiff.

James M. Tunnell, Jr. and William O. LaMotte, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Max H. Fruhauf, of Butzel, Levin, Winston & Quint, Detroit, Mich., of counsel, for defendant.

## OPINION AND ORDER

LATCHUM, District Judge.

This case is presently before the Court on the motion of the defendant, Outboard Marine Corporation ("O.M.C.") to strike interrogatories propounded to it by the plaintiff, N. W. Controls, Inc. ("N.W."). In this action, originally brought pursuant to the antitrust provisions of the Sherman Act, 15 U.S.C. § 1 et seq., and the Clayton Act, 15 U.S.C. § 12 et seq., the Court held that O.M.C. had committed an antitrust violation under Section 3 of the Clayton Act, 15 U. S.C. § 14, by tying its sales of remote control throttle cables with sales of its electric shift outboard and stern drive engines.[1] Final judgment was entered on November 9, 1971 in which the Court awarded damages for past injuries to N.W.[2], enjoined O.M.C. in the future from tying in any manner the sales of remote control cables to sales of O.M.C.'s outboard or stern drive engines and directed O.M.C. to treat the sales of such remote control cables and marine engines as sales of separate and independent products. Also during the course of the proceeding the parties stipulated to a secrecy order governing pre-trial discovery of confidential information.[3]

N.W. now asserts that O.M.C. has violated the injunction by misrepresentations made in correspondence with its dealers, causing a market place detriment to N.W., and has violated the secrecy order by making improper disclosures of confidential information on two occasions.

1. *The Injunction.*

As previously noted, the Court enjoined O.M.C. from tying in any manner the sale of remote control cables to sales

---

1. N. W. Controls, Inc. v. Outboard Marine Corporation, 333 F.Supp. 493 (D.Del. 1971).

2. The money judgment of $520,000. was satisfied on January 2, 1972.

3. Docket Item No. 18.

of outboard or stern drive engines, and directed it to treat in all respects the sales of the cables and the marine engines as sales of separate and independent products. N.W. alleges that, despite the injunction, O.M.C. has made statements in written correspondence with one of its dealers which imply that the remote control cable had been a free accessory with the purchase of an engine which must now be paid for and that the present cost increase was a result of N. W.'s successful suit. N.W. has served interrogatories on O.M.C. to determine whether similar misrepresentations have been made to other dealers allegedly in violation of the injunction. O.M.C. has moved to strike the interrogatories on the ground that no action is now pending since a final judgment was entered almost a year ago. N.W. claims that the Court has continuing jurisdiction to discipline parties who violate its orders.

■■ Unquestionably under its ancillary jurisdiction a court has power to enforce obedience to its orders. Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1965); and in order to determine whether its order is being obeyed, a court has the right to inquire whether there has been any disobedience thereof. In re Debs, 158 U.S. 564, 595, 15 S.Ct. 900, 39 L.Ed. 1092 (1895); In re Williams, 306 F. Supp. 617 (D.D.C.1969). However, before a court initiates a contempt proceeding or permits extensive discovery of suspected violations of its judgment, there should be at least a prima facie showing by the aggrieved party of disobedience of the order. MacNeil v. United States, 236 F.2d 149, 152 (C.A. 1,

1956), cert. den. 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119 (1956); National Labor Relations Board v. Arcade-Sunshine Co., Inc., 74 App.D.C. 361, 122 F. 2d 964, 965 (1941). Thus before the Court will permit the discovery sought here, N.W. must at least present a prima facie case raising a likelihood that the outstanding injunction is being violated.

■ N.W. has presented a letter[4] sent by O.M.C. to one of its dealers in December of 1971 which allegedly misrepresents material facts to the dealer in violation of the Court's injunction. The letter stated that "a free throttle cable would no longer be supplied with these engines. Now that you must purchase your cable . . .". N.W. claims that this language shows a violation of the injunction in two respects: first, the statement is deceptive in that the cable was never "free"; and second, the dealers will refuse to deal with N.W. since it was responsible for the loss of the "free" cable.[5]

The Court finds that on neither ground was its judgment violated. With regard to N.W.'s first ground, the letter informs the dealer that henceforth the engine and cable may be purchased separately. This is exactly what the injunction directed O.M.C. to do. That the letter could create the impression that the cable had previously been free does not constitute disobedience of the injunction which only proscribed tying future sales of remote control cables to sales of marine engines.

■■ The substance of N.W.'s second argument is as follows: A dealer who was misled by the letter into believ-

4. The letter in pertinent part read as follows:
"You were recently advised that a certificate entitling you to a free throttle cable would no longer be supplied with these engines. Now that you must purchase your cables, we urge you to think of more than price alone."

5. It is doubtful whether any of the dealers were naive enough to believe that they were getting a "free" cable. In addition,

the December 1971 letter makes reference to a previous communication, which was a form letter sent out about one month earlier. This earlier letter informed the dealers that the cable would no longer be supplied with the engine unit and that the price of the engine unit would be reduced accordingly. Thus, notwithstanding the language in the later correspondence, the dealers should have been aware that there would be a corresponding price reduction for the deletion of the cable.

ing that it was no longer receiving a "free" remote control cable would blame N.W. for the "loss" and out of resentment would refuse to have any dealings with N.W. However, it is to be noted that the letter makes no reference to N. W. Thus, it would appear that any dealer resentment would more likely be directed only to O.M.C. for terminating the so-called "free" cable. Moreover, even if the dealers were sufficiently acquainted with the litigation to connect N.W. with the "loss" and refuse to deal with it, the resultant injury to N.W. could not be said to have been caused by a violation of the injunction, because, as previously noted, the order only enjoined future tying arrangements.

Since on neither ground does there appear to be a violation of the final judgment, the Court will not permit further inquiry in this action into O.M.C.'s communications with its dealers.

## 2. The Secrecy Order.

On October 14, 1969 the parties stipulated to a secrecy order with respect to the handling of all documents containing confidential information. N.W. has charged O.M.C. with violating the secrecy order and seeks to have the defendant answer interrogatories to determine if there were additional improper disclosures. O.M.C.'s Wilmington trial attorneys have admitted to two improper disclosures [6] but assert that these technical violations were minor and unintentional, that they can not be attributed to O.M.C. and that the attorneys have taken definitive steps to prevent such incidents in the future.

█ Of course, if N.W. has suffered any real damage by the disclosure of confidential information in violation of the secrecy order, N.W. conceivably might be entitled to some relief. The question is whether N.W. should be allowed to seek any such relief ancillary to this action. "[A]ncillary jurisdiction should attach where: (1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter, . . . (2) the ancillary matter can be determined without a substantial new factfinding proceeding; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated." Wilgus v. Peterson, 335 F. Supp. 1385, 1389 (D.Del.1972); see also Dillon v. Berg, 347 F.Supp. 517 (D.Del. 1972). Applying the first, second and fourth criteria in the instant case, the Court finds that ancillary jurisdiction would be improper. First, the secrecy order was not an integral part of the main matter, which was an action for violation of the Clayton Act. The purpose of the secrecy order was merely to facilitate adequate disclosure of relevant information for the purposes of this suit while at the same time affording some protection to N.W. from the disclosure of confidential information to third parties. Second a substantial factfinding proceeding would be required to determine the gravity and frequency of any improper disclosures and the type of relief, if any, to be afforded. Third, the violations appear to be technical and minor by O.M.C.'s counsel, rather than O. M.C., and there has been no allegation that the improper disclosures were intentional or willful, so that the integrity of the secrecy order has not been substantially affected. Accordingly, the Court in its discretion concludes that an-

6. Certain financial information of N.W. by the secrecy order was restricted to use in this case by O.M.C.'s Wilmington trial attorneys. However, Wilmington counsel unintentionally revealed in 1972 certain of this information to Max Fruhauf, O. M.C.'s general counsel who had also been associated with Wilmington trial counsel in this case and to Mr. Gerling, O.M.C.'s corporate counsel, who was sent a copy of O.M.C.'s post-trial brief which contained some figures from N.W.'s financial statements. Docket Item No. 176.

**1258**

cillary jurisdiction of this case is inappropriate to provide N.W. with a discovery forum to ferret out any additional improper disclosures.

## ORDER

The Court finding that no further action is appropriate with respect to the alleged violations of the Court's injunction and the secrecy order, it is ordered that O.M.C.'s motion to strike N.W.'s interrogatories is hereby granted.