FLORIDA MEDICAL ASSOCIATION, INC., a Florida corporation, on behalf of its members, Louis C. Murray, M.D., Jack McCris, M.D., Jere Annis, M.D., O. William Davenport, M.D., Robert E. Windom, M.D., and Charles H. Berchert, M.D., on behalf of themselves and all others similarly situated, Plaintiffs,

and

American Medical Association, on behalf of its members, and Robert B. Hunter, M.D., Frank J. Jirka, Jr., M.D., Lowell H. Steen, M.D., Harold Gurgone, Walter E. Schrange, Plaintiffs (Intervenors)

and

Broward County Medical Society, Amicus Curiae,

v.

DEPARTMENT OF HEALTH, EDUCATION & WELFARE, Joseph A. Califano, Jr., Secretary of Health, Education & Welfare, Blue Shield of Florida, Inc., a Florida Corporation, and Group Health, Inc., a Florida Corporation, Defendants.

No. 78–178–Civ–J–S.

United States District Court, M. D. Florida, Jacksonville Division.

July 11, 1978.

---

John Slye, Jacksonville, Fla., for Blue Shield of Florida, Inc.

Steve J. Cohen, Miami, Fla., for Group Health, Inc.

Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for government—HEW.

Henry R. Goldberg, Columbia, Md., Vicki Schulkin, Washington, D. C., for HEW.

Peter L. Dearing, Jacksonville, Fla., for Florida Medical Ass'n, Inc.

Jack R. Bierig, Chicago, Ill., for American Medical Ass'n.

William DeF. Thompson, Fort Lauderdale, Fla., for Broward County Medical Society.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

This case is before the Court on a stipulation by the parties for a consolidated ruling by the Court on the merits of the case with the plaintiffs' preliminary injunction motion, based on the complete record of evidence presented at prior hearings as well as affidavits, memoranda of law, and other documents filed by the parties. Plaintiffs[1]

---

1. The original plaintiffs are the Florida Medical Association, Inc., a voluntary professional association incorporated in the State of Florida, and six individual physicians. The additional

seek to prevent the Secretary ("the Secretary") of the Department of Health, Education & Welfare ("HEW") from disclosing a list of all Medicare providers, including individually identified physicians, and the annual amounts of Medicare reimbursements attributable to them. Essentially, plaintiffs contend that they have a federally protected right of privacy, based on several federal statutes[2] and constitutional provisions,[3] which bars the disclosure of such information. Pursuant to Fed.R.Civ.P. 65(b), a temporary restraining order was issued on behalf of the original plaintiffs, and was extended for an additional ten days. Thereafter, by consent of the parties, that temporary restraining order was extended through June 19, 1978. In the interim, the additional plaintiffs were allowed to intervene in this case, and a temporary restraining order at their request was issued on behalf of a recertified class[4] of plaintiffs. That temporary restraining order was also extended for an additional ten days.

The primary issues raised in this case are (1) whether there are any federal statutory or constitutional provisions that prevent the disclosure of individually identified physicians' annual Medicare reimbursements; (2) if not, whether such information is exempt from obligatory disclosure by the Freedom of Information Act ("FOIA"); (3) if so, whether the disclosure of such FOIA-exempt information is prohibited by any federal statutory or constitutional provisions; and (4) if not, whether a reasonable and

prudent exercise of the Secretary's discretion would prevent his disclosure of such FOIA-exempt information. These issues are essentially questions of law. Equitable relief in the form of temporary restraining orders has been granted by the Court because it is convinced that it has subject matter jurisdiction over these issues, and is concerned that its jurisdiction would vanish through mootness if the Secretary should proceed to disclose the information that he proposes.

Meanwhile, however, the parties have been allowed additional time to brief the issues in this case, and the Secretary has obtained extensions of time in which to file an additional memorandum of law. While the Court waits for the help that the Secretary's memorandum of law may furnish, the additional ten-day extension of the temporary restraining order is about to expire. Once again, the Court is concerned that its limited subject matter jurisdiction might be nullified by the Secretary's unrestrained disclosure of the information that he proposes to release. Hence, the issue at this point is whether, in view of the expiration of the temporary restraining order and the Court's inability to extend it without his consent, the Secretary is free to disclose the list of annual Medicare reimbursement information, and destroy the Court's subject matter jurisdiction by rendering the issues moot. For the reasons that follow, the Court holds that the Secretary is not free to

plaintiffs, who intervened, are the American Medical Association, a national, voluntary professional association exceeding 200,000 members who are licensed physicians in all 50 states, four territories, and the District of Columbia, three individual physicians, and two individual patients. Additionally, the Broward County Medical Society was permitted to appear as amicus curiae on behalf of the plaintiffs.

2. The federal statutes relied on by plaintiffs are the Social Security Act, 42 U.S.C. § 1306; the Freedom of Information Act, 5 U.S.C. § 552; the Privacy Act, 5 U.S.C. § 552a; and the Trade Secrets Act, 18 U.S.C. § 1905.

3. The constitutional provisions on which plaintiffs rely are the First, Fourth, Fifth and Ninth Amendments.

4. The recertified class in this case is comprised of all physicians licensed to practice in Florida (including those who are members of the Florida Medical Association and those who are not, and including those who are members of the American Medical Association and those who are not) and all other members of the American Medical Association and who are not Florida physicians, if (1) they are providers of Medicare services within the meaning of the Medicare Act, and (2) they would be individually identified by the Secretary in a disclosure of annual Medicare reimbursement amounts.

extirpate this Court's limited subject matter jurisdiction through mootness.[5]

### Ancillary Jurisdiction

■ Once the prerequisites for a federal court's limited subject matter jurisdiction are satisfied, its power to act in order to protect and effectuate that jurisdiction is beyond serious question. The power to protect and effectuate properly acquired subject matter jurisdiction is known as "ancillary jurisdiction". Ancillary jurisdiction is not an anomaly to the principle that the subject matter jurisdiction of federal courts is strictly limited. Ancillary jurisdiction does not supply jurisdiction where none exists; but it is the inherent power of a federal court to act, where it has acquired original subject matter jurisdiction, in order to exercise that jurisdiction over the primary and principal issues before it. *Morrow v. District of Columbia,* 135 U.S.App. D.C. 160, 172, 417 F.2d 728, 740 (1969). *Cf. Utz v. Cullinane,* 172 U.S.App.D.C. 67, 72–3, 520 F.2d 467, 472–73 n. 9 (1975); *United States States v. Bohr,* 406 F.Supp. 1218, 1219 (E.D.Wis.1976); *Morgan v. Serro Travel Trailer Co.,* 69 F.R.D. 697, 703 (D.Kan. 1975). The doctrine of ancillary jurisdiction, then, "is based on the theory that it is essential to the independence and self-sufficiency of the Federal Courts." *Averdeen Hosiery Mills v. Kaufman,* 113 F.Supp. 833–34 (S.D.N.Y.1953).

■ The test for the exercise of ancillary jurisdiction is whether the secondary and additional issues or parties are logically related

. . . to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction. *Riviere Copper & Brass Inc. v. Aetna Cas.*

*& Surety Co.,* 426 F.2d 709, 714 (5th Cir. 1970).

*Lewis v. S. S. Baune,* 534 F.2d 1115, 1120 (5th Cir. 1976); *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1205 (5th Cir. 1975); *Warren G. Kleban Engin'g Corp. v. Caldwell,* 490 F.2d 800, 802 (5th Cir. 1974); *United States v. United Pacific Ins. Co.,* 472 F.2d 792, 794 and n. 7 (9th Cir. 1973), *cert. denied sub nom. United Pacific Ins. Co. v. Discount Co.,* 411 U.S. 982, 92 S.Ct. 2273, 36 L.Ed.2d 958 (1973); *Hercules Inc. v. Dynamic Export Corp.,* 71 F.R.D. 101, 108–09 (S.D.N.Y.1976).

■ The conditions when the exercise of ancillary jurisdiction is proper are universally recognized: ancillary jurisdiction attaches when

. . . (1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or *arises during the course of the main matter, or is an integral part of the main matter*; (2) the ancillary matter *can be determined without a substantial new fact-finding proceeding*; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled *to protect the integrity of the main proceeding or to ensure that the disposition in the main proceeding will not be frustrated. Morrow v. District of Columbia,* 417 F.2d at 740 (emphasis added).

*United States v. Wilson,* 176 U.S.App.D.C. 321, 324, 540 F.2d 1100, 1103 (1976); *Lamb v. Carey,* 162 U.S.App.D.C. 247, 251, 498 F.2d 789, 793 (1974), *cert. denied,* 419 U.S. 869, 95 S.Ct. 128, 42 L.Ed.2d 108 (1974); *N. W. Controls, Inc. v. Outboard Marine Corp.,* 349 F.Supp. 1254, 1257 (D.Del.1972); *Dillon*

---

**5.** Mootness is the destruction of constitutionally based subject matter jurisdiction by means of the disappearance of a genuine dispute, either through a change in factual conditions, or a change in the state of the law. *Satterwhite v. Greenville, Tex.,* 557 F.2d 414, 418 n. 10 (5th Cir. 1977); *Thurston v. Dekle,* 531 F.2d 1264, 1270 (5th Cir. 1976). *See North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30

L.Ed.2d 413, 415–16 (1971); *Concerned Citizens of Vicksburg v. Sills,* 567 F.2d 646, 649 (5th Cir. 1978); *Cedar-Riverside Environmental Defense Fund v. Hills,* 560 F.2d 377, 381 (8th Cir. 1977); *Lasky v. Quinlan,* 558 F.2d 1133, 1136 (2d Cir. 1977); *NLRB v. Globe Security Services, Inc.,* 548 F.2d 1115, 1117 (3d Cir. 1977).

v. Berg, 347 F.Supp. 517, 519 (D.Del.1972); Wilgus v. Peterson, 335 F.Supp. 1385, 1389 (D.Del.1972). Ancillary jurisdiction, in short, is the "common sense solution" to how a federal court of limited subject matter jurisdiction can achieve a complete, final, and just disposition in a case over which it has acquired subject matter jurisdiction originally. Morrow v. District of Columbia, 417 F.2d at 738.

■ There is no question that a federal court may exercise its ancillary jurisdiction to preserve the status quo pending the determination of claims and issues over which it has jurisdiction, by fashioning equitable injunctive relief. Hiram Walker, Inc. v. Serr, 277 F.Supp. 3 (E.D.Pa.1967), is a case that illustrates such equitable, injunctive, ancillary jurisdiction. In Serr v. Sullivan, 270 F.Supp. 544 (E.D.Pa.1967), the district court had held that, in the absence of a specific congressional, statutory grant of power to the Director of the Alcohol and Tobacco Tax Division (within the Internal Revenue Service), the Director did not possess general subpoena power, and the right to have such subpoenas enforced by a federal court, in the course of investigatory proceedings. That decision was ultimately affirmed. Serr v. Sullivan, 390 F.2d 619 (3d Cir. 1968).

In an attempt to circumvent the district court's ruling, while the appeal of that order was pending, the Director of the Alcohol and Tobacco Tax Division continued his investigatory proceedings and continued to issue administrative subpoenas to aid such proceedings. However, the Director, who was outside of the proper venue of the court, issued the similar subpoenas to individuals who were outside of the district court's venue, specifying that the subpoenas were returnable to locations outside of the district court's venue. Undeterred by the Director's venue arguments, the district court found that the petitioner faced a "continuing unwarranted threat of irreparable injury, without an adequate remedy at law," by the Director's unrestrained issuance of administrative subpoenas around the country, but outside of the proper venue of the district court. 277 F.Supp. at 5–6.

Hence, in order to prevent the Director from thwarting the district court's original jurisdiction and decision, as well as the threat of irreparable injury which the decision was intended to preclude, the district court exercised ancillary jurisdiction, enjoining the Director temporarily and permanently from issuing any administrative, investigatory subpoenas to the petitioner or his agents. Id. The foundation for this extraordinary equitable exercise of ancillary jurisdiction was the existence of the court's legitimate subject matter jurisdiction originally. Id. at 5; Sheridan v. Local 626 United Bro'hood of Carpenters & Joiners, 191 F.Supp. 347, 353 (D.Del.1961).

### All Writs Jurisdiction

28 U.S.C. § 1651 provides that the Supreme Court and all congressionally established courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." By this act, Congress recognized the inherent power of federal courts "to issue the extraordinary writs in aid of their given jurisdiction." Morrow v. District of Columbia, 135 U.S.App.D.C. at 167, 417 F.2d at 735. Moreover, the Supreme Court

. . . has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. New York Teleph. Co., 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376, 389 (1977).

The All Writs Act, then, is a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.'" Harris v. Nelson, 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281, 291 (1969), quoting Price v. Johnston, 334 U.S. 266, 282, 68 S.Ct. 1049, 1058, 92 L.Ed. 1356, 1368 (1948), which in turn quoted Adams v. United States ex rel. McCann, 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268, 271 (1942). Hence, unless otherwise specifically restricted by Congress,

. . . a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it. *Adams v. United States ex rel. McCann,* 317 U.S. at 273, 63 S.Ct. at 239, 87 L.Ed. at 271.

It is past question, therefore, that "federal courts have power to issue such writs and orders as are necessary to protect their jurisdiction." *United States v. Moore,* 427 F.2d 1020, 1023 (10th Cir. 1970).

It is [a fundamental principle] that a court of equity has the inherent power to issue such orders and injunctions that may be necessary to prevent defeat or impairment of its jurisdiction. If these fundamental principles were not so inherent in the court, such a court would be a feeble arm of government and for all practical purposes would be a nullity. *Id.; In re Quick Charge, Inc.,* 69 F.Supp. 961, 969 (D.Okl.1947), *rev'd on other grounds sub nom. Local 886 Internat'l Bro'hood of Teamsters, Chauffeurs, Warehousemen & Helpers,* 168 F.2d 513 (10th Cir. 1948).

Although issuance of such writs is discretionary, because they are extraordinary, they are governed by equitable principles. *Morrow v. District of Columbia,* 417 F.2d at 736. One of the extraordinary writs available to the Court is the writ of injunction. *Cf. Public Utilities Comm'n v. United Fuel Gas Co.,* 317 U.S. 456, 468–69, 63 S.Ct. 369, 375–376, 87 L.Ed. 396, 403 (1943). For example, in *FTC v. Dean Foods Co.,* 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966), the Seventh Circuit Court of Appeals issued an extraordinary restraining writ at the request of the Federal Trade Commission ("FTC"). The FTC challenged a proposed merger between Dean Foods Co. and Bowman Dairy Co. Since the courts of appeals have jurisdiction to review the final decisions of the FTC, the agency sought extraordinary relief from the court of appeals in order to preserve the status quo as well as the Seventh Circuit's "appellate jurisdiction [over final Commission orders]". *Id.* at 600, 86 S.Ct. at 1740, 16 L.Ed.2d at 805. Later, the Seventh Circuit dissolved its restraining writ and refused to enter a preliminary injunction on the theory that, since the FTC had not issued its own final cease and desist order, the agency had no authority to seek equitable relief from the court of appeals. *Id.*

The Supreme Court, ultimately, held otherwise. But in order to preserve the status quo and its vanishing jurisdiction, Mr. Justice Clark, for the Supreme Court, issued a preliminary injunctive writ at the request of the Solicitor General. *Id.* at 600–01, 86 S.Ct. at 1740–1741, 16 L.Ed.2d at 805. Although usually the exercise of this extraordinary power "is in the nature of appellate jurisdiction . . . to an inferior court", *id.* at 603, 86 S.Ct. at 1742, 16 L.Ed.2d at 807, quoting *Ex Parte Crane,* 5 Pet. 190, 193, 8 L.Ed. 92, 94 (1832), it is an inherent power of all federal courts "to preserve [their] jurisdiction or maintain the status quo by injunction pending review of an [administrative] agency's action", since such "power has been deemed merely incidental to the courts' jurisdiction to review final agency action." *Id.* 384 U.S. at 604, 86 S.Ct. at 1742, 16 L.Ed.2d at 807.

In the present case, the Court is convinced that its limited subject matter jurisdiction has been genuinely invoked by plaintiffs to review the proposed agency action by the HEW Secretary.[6] It would,

---

**6.** The Secretary has challenged the legitimacy of this Court's original subject matter jurisdiction to review his decision to disclose the annual Medicare reimbursement information. He bases his challenge upon a recent Fifth Circuit Court of Appeals decision, *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328 (5th Cir. 1978) (en banc). In that decision, the Court of Appeals held that it has no federal question jurisdiction, under 28 U.S.C. § 1331, to review decisions by the HEW Secretary concerning claims arising under the Medicare Act. Because the Medicare Act incorporated 42 U.S.C. § 405(h) of the Social Security Act (which precludes review of the Secretary's findings and decisions), but did not incorporate 42 U.S.C. § 405(g) of the Social Security Act (which supplies judicial review of the Secretary's findings and decisions), the Court of Appeals held that no review of the Secretary's

consequently, stultify the existence of the Court's federal question subject matter jurisdiction to review the HEW Secretary's proposed conduct, if the Court did not also

Medicare decisions was intended by Congress. *Id.* at 330, 331, 332. The Fifth Circuit held further that this lack of review jurisdiction applies even to constitutional claims concerning the Medicare Act. *Id.* at 331.

An absolute denial of jurisdiction to review claims based upon the federal Constitution would itself be constitutionally doubtful, however. *Id.* at 332. But the Fifth Circuit found that, as a result of the Court of Claims's decision that it has jurisdiction to review issues of law and constitutionality about the Secretary's Medicare decisions, *Whitecliff, Inc. v. United States,* 536 F.2d 347, 210 Ct.Cl. 53 (1976), *cert. denied* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), there remains an avenue of judicial review available in the federal courts. *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d at 332. Therefore, constitutional challenges to the Secretary's decisions under the Medicare Act are not without a forum for judicial review. *Id.*

An even more recent decision was delayed pending the Fifth Circuit en banc decision in *Dr. John T. MacDonald Foundation, Inc. v. Califano, supra.* In *American Ass'n of Councils of Med. Staffs of Private Hosps., Inc. v. Califano,* 575 F.2d 1367, the plaintiff challenged HEW regulations issued under the Medicare Act, to implement a provision of that act which requires hospitals, skilled nursing facilities, and home health agencies to establish utilization review plans, in order to qualify as providers. *Id.* at 1369. The specific regulation challenged requires smaller facilities to use committees outside of the institution or agency as utilization review committees. *Id.* at 1369. The plaintiff challenged the regulation as (1) ultra vires (i. e., promulgated without statutory authority); (2) promulgated without complying with the rule-making requirements of the Administrative Procedure Act ("APA"); and (3) denying fundamental due process guaranteed by the Fifth Amendment. *Id.* at 1370.

The Court of Appeals did not review those issues on the merits, however. Instead, it held that it lacked appellate subject matter review jurisdiction for the reason stated in the en banc decision of *Dr. John T. MacDonald Foundation, Inc. v. Califano, supra. Id.* at 1372. The District Court had held that it had subject matter jurisdiction under 5 U.S.C. § 706 of the APA. That conclusion became contrary to law after the Supreme Court ruled that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192, 200–01 (1977). The District Court had also held that it did not have federal question jurisdiction under 28 U.S.C. § 1331; and the Fifth Circuit refused to reverse that conclusion. *Id.* at 1371. Although the plaintiff had not sought

damages, but only injunctive and declaratory relief, the Fifth Circuit held that (1) it lacks subject matter review jurisdiction; but that (2) review jurisdiction was available in the Court of Claims if the plaintiff could allege and prove a damage claim. *Id.*

Neither one of those decisions deprive the Court of subject matter jurisdiction in this case, however. First, none of plaintiffs' statutorily-grounded or constitutionally-based claims challenge a decision by the Secretary pursuant to the Medicare Act. The Secretary's decision, and the proposed conduct which plaintiffs contest, is founded squarely upon the Freedom of Information Act ("FOIA") and the Secretary's own regulations issued to implement that act. 5 U.S.C. § 552; 20 C.F.R. § 401.1 *et seq.* By challenging the lawfulness of the Secretary's decision and proposed conduct, under the FOIA and HEW's own FOIA-implementing regulations, plaintiffs raise a federal question about the conduct of an agency and officer of the United States. Second, plaintiffs contest the Secretary's decision and proposed conduct on grounds stemming from independent federal statutes (such as the Privacy Act, the FOIA, the Trade Secrets Act, and the Social Security Act), as well as from provisions of the Constitution. Hence, for controversies (1) premised upon statutory and constitutional provisions other than the Medicare Act, and (2) concerning agency and officer conduct based upon statutes other than the Medicare Act, the Court has original subject matter jurisdiction under 28 U.S.C. § 1331(a). *See Califano v. Sanders,* 430 U.S. at 105–07, 97 S.Ct. at 984–85, 51 L.Ed.2d at 199–200 (1977); *Chrysler Corp. v. Schlesinger,* 565 F.2d 1172, 1183 and n. 40 (3d Cir. 1977), *cert. granted sub nom. Chrysler Corp. v. Brown,* 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); *Planning Research Corp. v. FPC,* 181 U.S.App.D.C. 33, 39–40, 555 F.2d 970, 976–77 and n. 13 (1977); *Sears, Roebuck & Co. v. GSA,* 180 U.S.App.D.C. 202, 204, 553 F.2d 1378, 1380 (1977); *Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190, 1204, 1209–10 (4th Cir. 1976), *cert. denied sub nom. Brown v. Westinghouse Elec. Corp.,* 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977). 28 U.S.C. § 1331(a) also supplies subject matter jurisdiction for the Court to consider plaintiffs' claim that the Secretary's decision, and proposed conduct, do not measure up to the appropriate standards for agency action under the review provided by the APA. 5 U.S.C. § 706. *See Califano v. Sanders,* 430 U.S. at 106–07, 97 S.Ct. at 984–85, 51 L.Ed.2d at 200. Moreover, insofar as plaintiffs purport to raise a claim under the FOIA, to prevent disclosure of information alleged to be exempt from compulsory disclosure by the FOIA, they invoke the FOIA's grant of subject matter jurisdiction

334

have "the incidental power . . . to exercise [its] authority derived from the All Writs Act," and to issue such injunctive relief as necessary to "protect its jurisdiction pending final determination of the matter." *FTC v. Dean Foods Co.,* 384 U.S. at 605, 86 S.Ct. at 1743, 16 L.Ed.2d at 808.

### The Federal Rules of Civil Procedure and Injunctive Relief

Fed.R.Civ.P. 65(b) restricts the issuance of a temporary restraining order to ten days, with only one additional ten-day extension, unless the restrained party consents to a further extension. As a temporary, equitable remedy, it is premised upon a sworn documentary showing of "immediate and irreparable injury." Similarly, a preliminary injunction, which is an extraordinary equitable remedy, *Sampson v. Murray,* 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 953, 39 L.Ed.2d 166, 187 n. 68 (1974); *Lewis v. S. S. Baune,* 534 F.2d at 1121; *Canal Authority of Fla. v. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974); *Jacksonville Maritime Ass'n v. Local 1408–A, Internat'l Longshoremen's Ass'n,* 424 F.Supp. 58, 64 (M.D.Fla.1976), *aff'd* 571 F.2d 319 (5th Cir. 1978). Additionally, whenever a court issues or denies a preliminary injunction, under Fed.R.Civ.P. 65(d) and 52(a), clear and specific findings of fact and conclusions of law must be set forth. *Granny Goose Foods, Inc. v. Local 70, Bro'hood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 443, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435, 453; *Canal Authority of Fla. v. Callaway,* 489 F.2d at 578; *Marshall v. Reinhold Constr., Inc.,* 441 F.Supp. 685, 692 (M.D.Fla.1977); *Jacksonville Maritime Ass'n v. Local 1408–A Internat'l Longshoremen's Ass'n,* 424 F.Supp. at 64. More-

over, there are four standard, equitable criteria which must be met for issuance of a preliminary injunction: (1) substantial likelihood of plaintiffs' success on the merits; (2) irreparable injury because of the unavailability of an adequate remedy at law; (3) threatened injury to plaintiffs outweighs possible injury to defendants, and (4) issuing a preliminary injunction will not work any disservice to the public interest. *Granny Goose Foods, Inc. v. Local 70, Bro'hood of Teamsters & Auto Truck Drivers,* 415 U.S. at 441, 443, 94 S.Ct. at 1125, 1126, 39 L.Ed.2d at 451, 452; *Sampson v. Murray,* 415 U.S. at 84 n. 53, 94 S.Ct. at 950, 39 L.Ed.2d at 183 n. 53; *Martinez v. Matthews,* 544 F.2d 1233, 1243 (5th Cir. 1976); *Buchanon v. United States Postal Service,* 508 F.2d 259, 266 (5th Cir. 1975); *Canal Authority of Fla. v. Callaway,* 489 F.2d at 572; *Marshall v. Reinhold Constr., Inc.,* 441 F.Supp. at 691; *Jacksonville Maritime Ass'n v. Local 1408–A Internat'l Longshoremen's Ass'n,* 424 F.Supp. at 64.

The Federal Rules of Civil Procedure, however, expressly do not affect the jurisdiction of federal courts, either to extend or limit it. Fed.R.Civ.P. 82. In the present case, the Court's ancillary jurisdiction, and its all writs jurisdiction under 28 U.S.C. § 1651(a), are unimpaired and undiminished by the specific requirements of Fed.R.Civ.P. 65 concerning preliminary injunctions and temporary restraining orders. Nevertheless, because the exercise of the Court's ancillary and all writs jurisdiction, to issue an ancillary writ of injunction, is an extraordinary remedy, most of the equitable principles that govern the issuance of preliminary injunctions remain relevant. The

---

to the Court for consideration of such a claim. 5 U.S.C. § 552(a)(4)(B) and (6)(C). *Cf. Philadelphia Newspapers, Inc. v. Department of Justice,* 405 F.Supp. 8, 10 and n. 13 (E.D.Pa.1975). To be sure, the jurisdictional power of the Court under the FOIA to consider such a claim, and the genuineness of that claim as a matter of federal law, are two analytically distinct issues. *Cf. Southpark Square Ltd. v. Jackson, Miss.,* 565 F.2d 338, 343 n. 7 (5th Cir. 1977). The fact that the FOIA confers jurisdiction in the District Court to consider claims alleged to arise under that act does not guarantee that the

purported claim is in fact available under the act.

Finally, by asserting that the Secretary's decision and proposed conduct violate the conditions for disclosure provided by the Privacy Act, plaintiffs invoke the Court's jurisdiction conferred under 5 U.S.C. § 552a(g)(1)(D) of the Privacy Act to consider alleged violations of it. *Harper v. United States,* 423 F.Supp. 192, 195 (D.S.C.1976).

In short, the Court holds that it has subject matter jurisdiction over the issues in this case.

threat of irreparable injury, in the absence of such extraordinary injunctive relief, remains the overriding equitable prerequisite. *Sampson v. Murray,* 415 U.S. at 88–92 and n. 68, 94 S.Ct. at 951–953, 39 L.Ed.2d at 185–87 and n. 68; *Lewis v. S. S. Baune,* 534 F.2d at 1121; *A. O. Smith Corp. v. FTC,* 530 F.2d 515, 525 (3d Cir. 1976); *Marshall v. Reinhold Constr., Inc.,* 441 F.Supp. at 692; *Jacksonville Maritime Ass'n v. Local 1408–A Internat'l Longshoremen's Ass'n,* 424 F.Supp. at 65.

▆ However, because the parties have stipulated to, and contemplated, the Court's final ruling on the merits of this case, the Court cannot make the usual, preliminary assessment of the merits of this case. The necessity for the Court to issue an ancillary writ of injunction is the threat that the case will become moot before the Court can rule on the merits. In these unique circumstances, it would be inappropriate for the Court to consider, even tentatively, the merits of plaintiffs' claims. Consequently, the Courts hold that, for purposes of issuing an ancillary writ of injunction to preserve the Court's jurisdiction in order to reach the merits, the Court ought not to prematurely consider the merits. This is not an altogether unusual situation. For example, in issuing a preliminary injunction in the setting of a contractual labor dispute, consideration of the merits of the dispute, even tentatively, is beyond the scope of the Court's jurisdiction, since the purpose of the injunctive relief is to send the parties to the informal arbitration process to which they contractually agreed. *Jacksonville Maritime Ass'n v. Local 1408–A, Internat'l Longshoremen's Ass'n,* 424 F.Supp. at 68–69.

The presence of impending irreparable injury, on the other hand, is compelling in this case. Unless the Court exercises its inherent jurisdiction to preserve the viability of the issues and the Court's subject matter jurisdiction over them, this case will become moot instantly. If the Secretary is not restrained further, and proceeds to disclose the list of individually identified annual Medicare reimbursements, plaintiffs will be left without active claims, and without any available relief. In short, the very conduct which constitutes the overall dispute in this case will have occurred, evading this Court's jurisdictional review.

The irreparable harm that plaintiffs will suffer if the Court does not issue an ancillary writ of injunction far outweighs any possible injury that the Secretary might suffer. If, as a matter of law, the Secretary is entitled to disclose the annual Medicare reimbursement information, this Court's ruling on the merits will vindicate his right. The Secretary will, then, have the unimpeded opportunity to disclose, not only the particular list of annual Medicare reimbursement information at issue in this case, but further such information in the future.

Finally, issuing an ancillary writ of injunction will not result in disservice to the public's interest. If, as plaintiffs contend, the Secretary's disclosures would violate the right of privacy that all Americans enjoy, under specific federal statutory and constitutional provisions, enjoining the Secretary from doing so, at least until the Court reaches the merits of plaintiffs' contention, may uphold and further the public interest. Certainly, this is so if plaintiffs should prevail, since the public interest lies in the same federal statutory and constitutional right of privacy that plaintiffs raise. On the other hand, if the Secretary should prevail, the public's interest in the information that he proposes to release will be satisfied by his free and unfettered disclosure

▆ Accordingly, the Court will issue an ancillary writ of injunction, preventing the Secretary from disclosing the list of annual Medicare reimbursement information until the Court disposes of the merits of this case.